(158 App. Div. 577.)

## PEOPLE v. SHEARS.

(Supreme Court, Appellate Division, Second Department.   October 10, 1913.)

1. EMBEZZLEMENT (§ 18*)—BY TRUSTEE—DEFENSES—INTENTION TO RETURN.
    While it was not larceny at common law, and a criminal intent is necessary to render the conversion of trust property by the trustee larceny, under Penal Law (Consol. Laws 1909, c. 40) § 1302, providing that a person acting as a trustee, etc., who appropriates to his own use or that of another any money or other valuables is guilty of larceny, it is no defense to a prosecution for larceny under the statute to show that the accused had a concurrent intention of returning the property at some future time, after he had enjoyed the use thereof; for the conscious violation of the statute constituted a crime.

    [Ed. Note.—For other cases, see Embezzlement, Cent. Dig. § 20; Dec. Dig. § 18.*]

2. EMBEZZLEMENT (§ 23*)—DEFENSES—RESTITUTION.
    Under Penal Law (Consol. Laws 1909, c. 40) § 1302, providing that the fact that the defendant intended to restore the property stolen is no ground of defense or mitigation if it has not been restored before complaint is made, the restitution before the making of the complaint is no defense to a prosecution for larceny by a trustee where the offense had been completely consummated; the statute merely declaring the common law.

    [Ed. Note.—For other cases, see Embezzlement, Cent. Dig. §§ 31–35½; Dec. Dig. § 23.*]

Appeal from Trial Term, Kings County.

Broc R. Shears was convicted of larceny, and he appeals.   Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and PUTNAM, JJ.

Robert H. Elder, of New York City, for appellant.

Edward A. Freshman, Asst. Dist. Atty., of Brooklyn (James C. Cropsey, Dist. Atty., and Hersey Egginton, Asst. Dist. Atty., both of Brooklyn, on the brief), for the People.

CARR, J.   The defendant has been convicted in the Supreme Court in Kings county of the crime of grand larceny in the first degree. From the judgment of conviction he has appealed to this court.

The question now involved is wholly one of law.   For a correct understanding of the contention of the appellant, a brief consideration of the facts proved at the trial is necessary.   The defendant and two others, Thomas F. Martin and Hermann H. Lucke, were appointed by the Supreme Court in Nassau county as trustees for the benefit of the creditors and stockholders of the Hollis Park Company, a corporation which had been dissolved voluntarily under section 57 of the Stock Corporation Law.†   This corporation had considerable money on deposit to its credit with a banking corporation known as the Borough Bank, in the borough of Brooklyn.   The Borough Bank had been taken over by the Banking Department of the State of New York and was undergoing liquidation.   On October 2, 1911, the Superintendent of Banks drew his check for $3,334.44 to order of "Thos. F. Martin, and others, trustees Hollis Park Co."   This check was in part payment of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Consol. Laws 1909, c. 59.

the amount on deposit with said bank to the credit of the Hollis Park Company. It came into the possession of the defendant as one of said trustees. He took it to his fellow trustees, and all three of them indorsed it under an express mutual agreement that the defendant should take it to the Mechanics' Bank in the borough of Brooklyn and deposit it to the credit of the trustees of the Hollis Park Company, in an account then to be opened in favor of said trustees. The defendant took the check, so indorsed, and deposited it with the Mechanics' Bank to the credit of a corporation known as the Crescent Mortgage Company, of which he was the president. This latter corporation had no connection whatever with the Hollis Park Company or its trustees. It had an account with the Mechanics' Bank, which had been practically exhausted at the time of the deposit to its credit of the trustees' check, and within a short time thereafter practically all the proceeds of said check were drawn out and expended in the purposes of said Crescent Mortgage Company.

On October 6, 1912, the defendant, as president of the Crescent Mortgage Company, drew a check for $334.44 to the "order of ourselves." He indorsed this check in the name of said corporation and deposited it in the Mechanics' Bank to the credit of "Thomas F. Martin, Hermann H. Lucke & Broc R. Shears Trustees Hollis Park Gardens." This was the first act on his part to apply any portion of the proceeds of the original check to the purposes for which he had received and held it as a trustee. On making this deposit, he received from the Mechanics' Bank a passbook showing the account between it and the trustees of the Hollis Park Company. This passbook contained as its first entry an item as follows: 1911, Oct. 7, "B. 334.44." The defendant changed this entry by inserting an additional figure "3," so that the entry appeared to read "3,334.44." He thereafter exhibited the passbook, with the false entry, to his fellow trustees, and thus misled them as to his conduct and induced them to believe that the original check to their order had been deposited to their credit as trustees of the Hollis Park Company. It happened that the Borough Bank Company was interested largely in the Hollis Park Company, and the State Banking Department had occasion to inquire as to the disposition of the proceeds of the original check. In making such inquiry the facts above briefly outlined were discovered. The defendant was threatened with criminal proceedings and his two brothers came to his aid and raised moneys by which restitution was made as to the proceeds of the original check, with interest on the sum diverted. This restitution was made before the beginning of any criminal proceedings.

[1] The defense consisted of evidence as to the defendant's previous good reputation and of testimony by the defendant's brothers that at or about the time of the diversion of the original check he had been endeavoring to procure an advance of a considerable sum of money from his father and had expected to secure it. At various stages of the trial, the learned counsel for the defendant attempted to secure from the trial court a ruling that if the defendant, when he diverted the check which he received as trustee, had an intent of making subsequent restoration, reparation, or restitution of the proceeds thereof, he could not be convicted of larceny, because under such circumstances

there was an absence of criminal intent, and hence no larceny. The learned trial court repeatedly refused so to rule, and numerous exceptions were taken by the defendant's counsel. The defendant himself gave no testimony. In considering the point presented by the appellant, we shall assume that there was sufficient evidence from which the jury might infer that the defendant had a present intention of making future restitution at the time he misapplied the check. According to the proofs, he had then no present ability to make reparation or restitution, and his intention, if such he had, was based upon simple hope or expectation. Every act he did in connection with the misapplication of the check was conscious, deliberate, and apparently with full knowledge that he was acting illegally. There was no mistaken but honest claim of right on his part. His act in making a false entry in the passbook and exhibiting it to his fellow trustees so characterizes his conduct as to require no comment.

It is true that at common law and under our Penal Code and the present Penal Law, a criminal intent is essential to the crime of larceny. Our books are full of cases in which this rule has been declared and applied under varying circumstances, some of which, to say the least, are quite curious, and in the short space of a judicial opinion it would be an impossible task to summarize or classify these precedents. It may be pointed out, however, that the acts of the defendant were not larceny at common law and not cognizable in a criminal prosecution. The underlying concept of larceny at common law was an initial trespass and trover. Where there was no trespass there was no larceny, though trespass and trover in themselves were not necessarily larceny. 3 Pollock & Maitland, 398; 3 Holdsworth, 286; 3 Stephen's History of the Criminal Law, 121 et seq. The defendant's conduct amounted to what was known formerly as "a criminal breach of trust," and until quite recent times was cognizable only in a court of equity and punishable only as contempt of court, where restitution was not made in obedience to a judgment so decreeing. 3 Stephen's History of Criminal Law, 129. Nor did the defendant's act come within the scope of the early statutes creating the crime of embezzlement, which statutes were enacted to meet some of the deficiencies of the common-law rules as to larceny.

In the case at bar, the misappropriation of the original check was to use of another, i. e., the Crescent Mortgage Company. This would not have constituted embezzlement under the definition of section 59, art. 5, tit. 3, pt. 4, of the Revised Statutes. In 1874 this statute was amended by chapter 207 of the Laws of that year in such manner that a misappropriation of property to the use of another by certain defined persons was made the crime of embezzlement. Even in this act, there was an omission of a great number of individuals who might obtain possession of property in a fiduciary capacity and subsequently misappropriate it fraudulently, for example executors, administrators, guardians, and trustees of express trusts. However, in 1877, by chapter 208 of the Laws of that year, a fraudulent misappropriation of property by such persons was declared to constitute the crime of embezzlement, and was made punishable by a fine and imprisonment to enforce payment of the fine. In 1881, the Penal

Code was enacted, and the previous statutory provisions on this subject as applicable to this case were recast and enacted in section 541 thereof, which now appears as section 1302 of the Penal Law, and which provides in part as follows:

"A person acting as executor, administrator, committee, guardian, receiver, collector or trustee of any description, appointed by a deed, will, or other instrument, or by an order or judgment of a court or officer, who secretes, withholds, or otherwise appropriates to his own use, or that of any person other than the true owner, or person entitled thereto, any money, goods, thing in action, security, evidence of debt or of property, or other valuable thing, or any proceeds thereof, in his possession or custody by virtue of his office, employment, or appointment, is guilty of grand or petit larceny in such degree as is herein prescribed, with reference to the amount of such property," etc.

Of course, this statute requires, as an element of criminality in its violation, a conscious and willful intent to disregard its prohibitions. Where, however, such intent exists, its criminality is in no way lessened by the fact that with the conscious intent to violate this statute there went at the same time an intent to make future restitution after such violation. If such were the case, the statute might just as well have never been enacted, for it would have been practically useless to prevent the evils at which it was aimed. We are of opinion that the learned trial court committed no error in its rulings on this point, and that the question of the defendant's guilt, under the proofs presented at the trial and hereinabove recited, was in no way affected by the existence of any concurrent intent of future restitution, when he consciously and deliberately did the act prohibited by the statute, for it is indisputable that he then and there intended knowingly to do an unlawful act at that moment, whatever he may have intended to do at some future time by way of reparation or restitution if he should be able.

[2] The learned trial court, however, granted the defendant a "certificate of reasonable doubt," which stayed the execution of the judgment of conviction. This certificate was granted apparently because of a question as to the proper interpretation of section 1307 of the Penal Law, which was formerly section 549 of the Penal Code. This statute reads as follows:

"The fact that the defendant intended to restore the property stolen or embezzled, is no ground of defense, or of mitigation of punishment, if it has not been restored before complaint to a magistrate, charging the commission of the crime."

This provision appeared in our statutes for the first time in 1881, as section 549 of the Penal Code. As then enacted, and as it now stands, it is almost a literal transcript of section 609 of the draft proposed Penal Code submitted to the Legislature in 1865, where it was proposed in relation to the then statutory crime of "embezzlement." It has been construed infrequently. In Parr v. Loder, 97 App. Div. 218, 221, 89 N. Y. Supp. 823, it was said to be "rather a declaration than a departure in the criminal law," where it was always well settled that if a crime had been committed in the taking, or misappropriation, a subsequent restoration of the property did not constitute a defense.

Nor does the learned counsel for the defendant so contend. Undeniably, if the defendant had actually committed larceny, the fact that he or his brothers subsequently made restitution, on the discovery of the offense but before criminal proceedings, in no way purged the act of its criminal character, either before or since the enactment of this statutory provision. The only real dispute involved in this appeal arises from the question hereinbefore discussed, whether the defendant escaped criminality in his conduct by accompanying his willful, conscious, and deliberate violation of the statute with a secret intent, based upon hope or expectation, of making restitution some time thereafter, either before or after discovery of his offense.

If the existence of an intent to make subsequent restitution purged the defendant's acts of criminality, then the trial court erred in the theory on which it submitted the case to the jury. But, as we have said above, we do not deem the presence of such intention a legal defense available to the defendant under the indictment and proofs in this case. It must be admitted that there are many precedents, especially among early English cases, from which the appellant has sought support for his contention; but each of these cases must be considered in the light of its own facts. They are not susceptible of such generalization of rule as the appellant asserts. It is true enough that in many cases there are declarations that to constitute a criminal intent to commit common-law larceny and even statutory embezzlement there must have been an intent to deprive the true owner of his property "permanently." But this did not mean that a concurrent intent to make restitution some time or some how thereafter purged a deliberately unlawful taking and misappropriation of criminality. The defendant by misappropriating and diverting this check consumed it entirely. He could not thereafter restore it as property because it would have been then but a valueless piece of paper. His act deprived the owners of this check of their property "permanently" enough, and he was indicted for unlawful and intentional misapplication of the check itself.

We think the judgment of conviction should be affirmed. All concur.