The People of the State of New York, Respondent *v.* Everett Dalsis, Appellant.

Fourth Department, December 5, 1957.

*Edward M. Horey* for appellant.

*Richard H. Dawson, District Attorney,* for respondent.

Bastow, J. We have before us for review an intermediate order denying a motion to dismiss an indictment made by the defendant after he had been granted an inspection of the Grand Jury minutes and a judgment entered upon a verdict of a jury convicting defendant of the crime of grand larceny, first degree, in violation of section 1302 of the Penal Law.

It appears from evidence presented to both the Grand and Trial Juries that on February 15, 1955 the Chautauqua National Bank & Trust Company of Jamestown, as entruster, and Dalsis Lincoln-Mercury Sales Corp., as trustee, executed a statement of trust receipt financing in substantially the form prescribed in subdivision 2 of section 58-e of the Personal Property Law.

The personalty to be financed was described as motor vehicles. The document was filed with the Department of State on February 21, 1955. Previously, on March 2, 1954 the same parties had entered into an agreement described as the " Midland Time Wholesale Plan — Dealer's Agreement." In essence, the corporate automobile dealer to induce the bank to finance automobiles purchased by the dealer agreed, among other things, (1) to execute trust receipts covering the automobiles; (2) to hold the vehicles for the sole purpose of exhibiting or

storing and procuring the sale thereof for not less than the release price with the right given to the bank to repossess, with or without notice; (3) upon sale to account to the bank and deliver to it the proceeds of sale and pending such delivery to hold the proceeds in identical form received and separate and apart from the dealer's property. The word " proceeds " was defined as " checks, notes, drafts, conditional sales contracts, chattel mortgages and other instruments evidencing and/or securing any such debts ".

The testimony before the Grand Jury was short and simple. Three officers of the bank were called as witnesses. Their collective testimony in substance was that on various dates in September, November and December, 1955 the bank paid the Ford Motor Company the total sum of $21,430.59 for seven Mercury and one Lincoln automobiles sold by Ford to the corporate dealer. On January 11, 1956 an employee of the bank " checked the floor plan " of the corporation and found four of these cars " missing ". Another " check " was made five days later and the remaining four cars were " missing from the floor." On January 18 a letter was delivered to the corporation by the bank in which demand was made for payment of all amounts due under trust receipts or immediate possession of all new and used cars on which the bank held trust receipts. The reason for this demand was stated to be " a change in your financial condition and/or means of ability to pay ". A similar notice was served on February 6, 1956. In the interval checks had been received by the bank drawn by the corporate dealer in payment of the amounts due on two of the cars. The checks were not paid because of insufficient funds. The bank received neither the automobiles nor the moneys due.

It was upon this evidence that an indictment was returned accusing Dalsis, individually, of the crime of grand larceny, first degree, contrary to section 1302 of the Penal Law, in that Dalsis, being then the president of the corporation, which was the trustee, secreted, withheld and appropriated " to his own use, and that of a person other than the (bank), the true owner thereof, the above described automobiles, and lawful money of the United States of America, having an aggregate value of $21,430.59 ". Section 1302 mentioned in the indictment provides that a person acting in certain named fiduciary capacities, including a trustee of any description, who " secretes, withholds, or otherwise appropriates to his own use, or that of any person other than the true owner, or person entitled thereto " any money or property " in his possession or custody by virtue of his office " is guilty of larceny.

The historical backgrounds of sections 1290 and 1302 of the Penal Law are of interest. Prior to 1942 the former section defined not a single crime of larceny but three separate and distinct offenses, known as larceny, embezzlement and obtaining money by false pretenses. Subdivision 2 thereof expressly provided that if certain defined persons had property in their possession, among other things, as a bailee, attorney, clerk or trustee and "appropriates the same to his own use * * * steals such property." The definition of larceny was redefined (L. 1942, ch. 732) but the amendment did not broaden the scope of the crime nor designate as criminal what theretofore had been innocent and not criminal. (The New Larceny Law, Fuld, J., N. Y. L. J., May 19, 1942, p. 2124; see, also, 23 Brooklyn L. Rev., pp. 250–256.)

Section 1302 had its origin in chapter 208 of the Laws of 1877. In *People* v. *Shears* (158 App Div. 577, 581, affd. 209 N. Y. 610) it was said: "In 1874 this statute [then section 1290] was amended by chapter 207 of the laws of that year in such manner that a misappropriation of property to the use of another by certain defined persons was made the crime of embezzlement. Even in this act there was an omission of a great number of individuals who might obtain possession of property in a fiduciary capacity and subsequently misappropriate it fraudulently, for example, executors, administrators, guardians and trustees of express trusts. However, in 1877, by chapter 208 of the laws of that year, a fraudulent misappropriation of property by such persons was declared to constitute the crime of embezzlement, and was made punishable by a fine and imprisonment to enforce payment of the fine. In 1881 the Penal Code was enacted (Laws of 1881, chap. 676), and the previous statutory provisions on this subject as applicable to this case were recast and enacted in section 541 thereof, which now appears as section 1302 of the Penal Law". Section 1302 presently makes it larceny if a fiduciary "secretes, withholds, or otherwise appropriates" money or property to his own use or that of any other person, other than the true owner. Similarly, the Statute of Limitations applicable to larceny by a fiduciary has been given special consideration. (Code Crim. Pro., § 142, as amd. by L. 1946, ch. 210; see, also, 1946 Report of N. Y. Law Rev. Comm., p. 97 *et seq.*; 22 N. Y. U. Law Quarterly, p. 488 *et seq.*)

In the present case the prosecutor chose to submit to the Grand Jury an alleged violation of section 1302 of the Penal Law against Dalsis as an individual for alleged acts done "as a trustee" while serving as president of the corporation. Thus,

in his opening remarks to the Grand Jury the District Attorney stated that the case to be presented involved the operation of a trust receipt and " the question as to whether or not the failure of a trustee under a trust receipt to deliver either the goods or the money involved constitutes larceny." The prosecutor further instructed the body that it would be for them to determine whether or not the corporation was in effect a trustee " and if so did the corporation or its officer, Everett Dalsis, violate the duties of a trustee and if he did violate them should section 1302 of the Penal Law apply." There was no proof that there was any trustee except the corporation. The first witness expressly testified that the bank's dealings were with the corporation. After the evidence was closed the theory was again enunciated to the Grand Jury by the prosecutor that if they found the corporation to be a trustee and further found that Dalsis, acting as president, failed to pay over the funds received from the sales of the car then the jury would be justified in finding that Dalsis had violated sections 1290 and 1302 of the Penal Law. The indictment, however, alleges only a larceny in violation of section 1302.

In passing upon the motion to dismiss the indictment after defendant had been granted an inspection of the Grand Jury minutes the court was called upon to determine whether there was sufficient evidence before the Grand Jury to sustain the indictment. (*People* v. *Sweeney,* 213 N. Y. 37, 45; see, also, *People* v. *Howell,* 3 A D 2d 153.) In our opinion the evidence was insufficient and the motion should have been granted. Inasmuch as the indictment proceeded to trial it is not inappropriate to examine the proof there presented by the People and in connection therewith point out the insufficiency of the evidence presented to both Grand and Trial Juries. After offering in evidence the documents to show the trust relationship between the bank and the corporate dealer, the People put in evidence eight certified copies of certain documents executed upon a form known as MV50 being certificates of sale filed with the Bureau of Motor Vehicles. There appears upon each the name of seller, purchaser, date of sale and purchase and a description of the motor vehicle. These cover the eight automobiles in question and give dates of sale between December 27, 1955 and January 17, 1956. The name of the seller was stated to be Dalsis Lincoln-Mercury Sales Corp. but most significant is the fact that five of these certificates were signed by one Spencer, as " officer of corporation " while the other three were signed by the defendant in the same capacity. There was further proof that " checks " of floor plans were made on two dates in

January with four cars "missing" on one day and four more on the second occasion five days later. There was also testimony as to oral admissions made by the defendant and his wife that some of the cars had been sold.

It is unnecessary in the light of our view of the disposition to be made of this appeal to discuss the errors alleged by appellant to have taken place during the trial. They were numerous and substantial and in the exercise of discretion a new trial would be required as minimal relief. The record aptly illustrates how error was compounded by the failure of all participants in the trial to recognize the precise relationships that existed between the corporation and the defendant on the one hand and the bank on the other. It is apparent that the indictment and proof led the trial court completely astray. In its charge the jury was told that "The trust agreement had appointed and set up the defendant, Everett Dalsis, as trustee" and that the eight cars, according to the People's contention "had been disposed of by the defendant, and the proceeds therefrom were not turned over by the defendant as trustee" to the bank. The subject was later returned to and the jury told that the defendant "admits that he was a trustee under the trust agreement" and "on various occasions he was in default under the agreement and that no action was ever taken against him".

Sufficient has been written to show that the only trustee in these transactions was the corporation of which Dalsis was president. The jury was never informed that the trustee according to the documentary evidence was the corporation. It follows that the jury was not instructed as to the role played by the defendant, the law applicable thereto and what factual findings must be made before they could convict. Any attempt to do so, however, except in the most general terms, would have collapsed because of the paucity of proof to make defendant a criminal participant. The question is thus presented as to whether the defendant as an individual may be convicted of larceny "as president of the corporation" upon proof that might lead to the conclusion that the corporate trustee had violated section 1302 of the Penal Law. In passing it should be added that there was not a shred of evidence tending to prove Dalsis guilty of any individual appropriation of property of any description.

As we understand the position of the People it is that inasmuch as the defendant owned all of the corporate stock and was the president of the corporation we should ignore the corporate entity, pierce the corporate veil and install the

defendant as the trustee of the agreement made between the bank and the corporation. It is familiar law in some areas, other than violations of a criminal statute, that when the corporate entity is used for certain purposes " the courts will draw aside the web of entity, will regard the corporate company as an association of live, up-and-doing, men and women shareholders, and will do justice between real persons." (Wormser, The Disregard of the Corporate Fiction and Allied Corporate Problems, p. 84.) But here section 1302 is a penal statute and must be strictly construed. Moreover, the language used in the Uniform Trust Receipts Act (Personal Property Law, § 51, subd. 14) clearly defines the word " trustee " and states that the use of the word " shall not be interpreted or construed to imply the existence of a trust or any right or duty of a trustee in the sense of equity jurisprudence other than as provided by this article." Upon the facts here presented we may not undertake to name a new trustee for the parties to these agreements.

We recognize the general rule that a corporate officer is criminally liable for his acts, though done in his official capacity, if he participates in the unlawful act either directly or as an aider, abettor or accessory. Conversely he is not ordinarily liable criminally for the corporate acts performed by other officers of the corporation (3 Fletcher's Cyclopedia Corporations [Perm. ed.], § 1348; 33 A. L. R. 787; *People v. Sherman,* 133 N. Y. 349; *People v. Cooper,* 200 App. Div. 413; *People v. Brainard,* 192 App. Div. 816; *People v. England,* 27 Hun 139.) Similarly, corporate officers are made criminally liable by statute for certain unlawful acts. (Penal Law, §§ 664, 665.)

Each case, however, must be examined within the frame of the statutory provision claimed to have been violated and in the light of the proven facts. Section 1302, with which we are here concerned makes it a crime, among other things, for a trustee to withhold property from the person entitled to it. " This statute requires as an element of criminality in its violation a conscious and willful intent to disregard its prohibitions." (*People v. Shears,* 158 App. Div. 577, 581, affd. 209 N. Y. 610, *supra.*) Factually, it appears that the bank with full opportunity to explore the status of the corporation and defendant's position as stockholder and officer saw fit to enter into a trust agreement with the corporation. If doubt had existed there could have been insistence that Dalsis, as an individual, be a joint trustee with the corporation. Instead, it was content to accept the corporate trustee. The documentary evidence discloses that certificates of sale of five of the eight auto-

mobiles were executed by a corporate officer other than defendant. There is no evidence that Dalsis personally secreted, withheld or appropriated any property. When the time for accounting came the corporate trustee was unable to produce either the funds or the automobiles. The case was not tried or submitted upon the theory that the defendant aided or abetted any unlawful act and there was no proof to sustain such a finding. From all that appears in this record the unlawful acts may have been performed by another corporate officer, or an employee or a stranger.

The indictment herein, the proof upon the trial and the submission of the case to the Trial Jury were all based upon the conclusory finding or assumed fact that the defendant was a trustee. There was no proof before either Grand or Trial Jury to justify such an assumption or conclusion. A corporate officer by fiat of a grand jury or trial court may not be made a trustee when the documentary evidence speaks authoritatively to the contrary. Moreover, there was no proof that Dalsis caused the cars to be missing or failed to account for the proceeds thereof. Indeed, the testimony of the bank officials disclosed that in the face of the contract provision that funds from the sales of cars should not be commingled it had been the practice of the corporation with the knowledge and consent of the bank over a period of months or years to deposit such moneys in the general funds of the corporation. The contract was further amended by practice or custom, according to the testimony of a bank official, to permit the corporation to use the trust funds for general purposes and issue sight drafts which, according to the witness, facilitated the corporate dealer in getting money and was done to enable the bank to be "in line with competition" from local finance companies in Olean. We search the record in vain, however, as to what part Dalsis played in these operations. It may be gleaned that there were other officers and employees and the defendant's wife apparently was an active participant in the business. There arises from this murky factual situation no evidence that the defendant participated in any unlawful or criminal act either directly or indirectly.

The judgment of conviction should be reversed and the indictment dismissed.

All concur. Present — McCurn, P. J., Vaughan, Kimball, Williams and Bastow, JJ.

Order denying motion to dismiss indictment reversed upon the law and facts and motion granted. Judgment of conviction reversed upon the law and facts and indictment dismissed.