THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PAUL R. DEAN, Appellant, et al., Defendant.

Fourth Department, May 30, 1975

*Palmiere, Passero & Crimi (Charles F. Crimi* of counsel), for appellant.

*Jack B. Lazarus, District Attorney (Michael Nelson* of counsel), for respondent.

SIMONS, J. On March 16, 1973 defendant corporation issued a check for $60,503.56 signed by Kathryn Poluch, a secretary, made payable to Insana Construction Co. Insana presented the check for payment on March 22 and payment was refused for insufficient funds. On the advice of defendant corporation Insana again presented the check for payment on or about March 26, 1973 and payment was refused a second time. Appellant, Paul R. Dean, was one of three stockholders in defendant corporation and of the three he was the only one who actually participated in the business. The jury found appellant and the corporation guilty of issuing a bad check (Penal Law, § 190.05, subd 1). The corporation does not appeal and our only concern here is the criminal liability of Paul R. Dean individually.

Briefly, this is what happened. Insana Construction Company contracted to improve certain sewer facilities for Monroe County and pursuant to that contract deposited bonds with the county (see General Municipal Law, § 106). When the

work was completed the county agreed to return the bonds or to have them cashed. Insana authorized defendant corporation, a bond broker, to receive the bonds, sell them and transmit the principal and interest to Insana. The bonds were sold by defendant corporation and deposited in its account with Chemical Bank on March 9, 1973. After that date the stub entries of defendant's checkbook reflect several stock purchases (defendant was not authorized to buy or sell stock for customers), among them approximately four and one-half million dollars worth of Xerox stock which defendant's employees testified was purchased for appellant. On at least two occasions between March 9, the date when Insana's bonds were sold, and March 16, when the Insana check was issued, the ledger sheet showed that the corporation's bank balance was less than the amount of the deposit from the Insana bond proceeds. The jury's verdict indicates its finding that when the Insana check was drawn on March 16 the drawer, Paul R. Dean & Company, Inc., had insufficient money in the bank to cover it and that payment of the check was refused upon presentation to the drawee. The evidence supports those findings. Appellant contends, however, that he may not be found guilty of issuing a bad check because he was not the "drawer" or "representative drawer" of the instrument and because the evidence does not support the additional finding necessary to prove the crime, i.e., that he personally intended or believed at the time of utterance of the Insana check that payment would be refused (Penal Law, § 190.05, subd 1).

Clearly, the drawer of this check was Paul R. Dean & Company, Inc., the principal obligor, and appellant was neither the drawer nor the representative drawer (Penal Law, § 190.00, subds 2, 3). Nevertheless, even though his signature does not appear on the check, he may be criminally responsible for the acts of the corporation under the provisions of section 20.25 of the Penal Law if he caused the check to be issued in the name of the corporation. The evidence in the record is sufficient to establish that he did so.

Appellant was the only active principal in the business and he ran its Rochester office. Two of the corporation's employees were permitted to issue checks against its accounts. Whenever the checks exceeded five or six thousand dollars appellant either signed the checks or personally authorized them. If there were insufficient funds in the bank account, the employees did not issue checks without his approval, but notwith-

standing this practice, the testimony and the corporate records demonstrate that overdrafts were routinely issued, and the bank account had a negative balance on several occasions. It is also clear that this course of conduct was under the control of appellant and that he acquiesced in it. Although he was not a drawer or a representative drawer, he was a responsible and active participant in the practice, and in the language of the statute, he "caused" the conduct of the drawer, Paul R. Dean & Company, Inc. (see *People v Alrich Rest. Corp.,* 53 Misc 2d 574 and cf. *People v Dalsis,* 5 AD2d 28, 34–35).

The evidence also supports the finding implicit in the jury verdict that appellant intended or believed that the check would be dishonored when presented (Penal Law, § 190.05, subd 1, par [b]).

The statutory presumptions found in section 190.10 of the Penal Law provide that a drawer having insufficient funds to cover a check at the time it is drawn is presumed to know of such insufficiency, and further, in subdivision 2 that the drawer of a dishonored check is presumed to have intended or believed the check would be dishonored upon presentation when (i) the drawer had insufficient funds with the drawee at the time of utterance, (ii) the check was presented not more than 30 days after date of utterance and (iii) the drawer had insufficient funds with the drawee at the time of presentation.

These presumptions were not overcome. On the day the Insana check was drawn, the corporation's checkbook showed a negative balance and appellant's bookkeeper testified the account was overdrawn by more than $207,000. Mrs. Poluch could not remember whether she informed appellant of this negative balance as was her usual practice, but she did request his authorization to issue the Insana check. The deposits to the account between March 16, the date the check was issued, and March 22, the date it was first presented, were less than a million dollars and these deposits were expended before March 22. When the Insana check was presented March 22, the overdrafts had reached a total of three and one-half million dollars and to the knowledge of appellant the account was heavily overdrawn because on that day he in-

structed his bookkeeper to gather $1,850,000 worth of the Xerox stock purchased earlier in March and hand deliver it to New York to establish a credit balance in the account.[1] Even with that credit the account remained overdrawn, the Insana check was not honored and the corporation's denouement followed within a few days.

Appellant claims that the corporation had money or credit in the Chemical Bank at the time in question because the bank had extended overdraft privileges in the past (Penal Law, § 190.00, subd 6). There was testimony that it was the company practice to issue checks without funds and to rely upon the bank calling before "bouncing" a check. The company then covered the check after receiving the call. The bookkeeper testified that the bank rarely paid the checks before the money arrived unless it was a small check. She conceded that the Insana check for $60,503.56 was a "large" check. Thus, the proof was not so much that the corporation had overdraft privileges sufficient to cover this check, but that appellant chose to play fast and loose with its checking account.

Finally, we have considered appellant's contention that the court's instructions improperly amended the indictment by referring not only to conduct on March 16, the date contained in the indictment, but also March 26, a date not specified in it. There was a continuing course of conduct involving the issuance, delivery, presentment and re-presentment of this check. The court's reference to the later date when reading the first count of the indictment without specifically mentioning it on the bad check count, of which appellant was convicted, was pertinent to the series of transactions and to establishing appellant's knowledge and participation in the event. It did not submit an additional crime to the jury and appellant's defense was not prejudiced by the statement.

The judgment should be affirmed.

CARDAMONE, J. P., MAHONEY, GOLDMAN and DEL VECCHIO, JJ., concur.

Judgment unanimously affirmed.

---

1. It is interesting to note that those stock certificates apparently secured payment of checks issued to buy the self-same stock.