OPINION OF THE COURT
Fuchsberg, J.
After a nonjury trial in the Criminal Court of the City of New York, appellant Walter Sakow was convicted on two counts of violation of the fire code, section 488-1.0 of the Administrative Code of that city, in that he willfully neglected and refused to comply with violation orders issued by the fire department directing the correction of hazards in the twin buildings located at 154-160 East 91st Street in Manhattan. The judgment has been upheld by the Appellate Term, First Department.
 On the present appeal, aside from questions he raises about the propriety of the sentence, his argument revolves about two assertions: (1) that he could not be held criminally liable because title to the buildings was not held in his name but in that of corporations of which he was merely a stockholder and (2) that delivery of the violation orders had not been effected in a manner consistent with the requirement of the Administrative Code. On the ensuing analysis, we find these contentions without merit.
At the outset, we note that the existence of the violations *135 covered by the fire department orders appears to have been incontestable. The largely unoccupied buildings had been the scene of at least a dozen fires, in one of which two fatalities had occurred. Their dilapidated and dangerous condition clearly posed a risk to public safety. Nevertheless, despite the violation orders, and in the face of a plea of guilty accepted on an earlier charge in which a corporation was permitted to be substituted for Sakow as the pleading defendant, the conditions had remained uncorrected.
It is also scarcely open to serious dispute that, in the context of this prosecution, the trial court could conclude, as it did, that Sakow was the owner of the property on May 29, 1975, when the violation orders were issued, and on December 26, 1975 and January 10, 1976, when further inspection by the fire department indicated that they had been ignored. During the trial, at which he did not take the stand, there was adequate proof from which it could be inferred that, during the years 1972 through 1975, he was the active manager and dominant controlling force in a group of corporations among whom title to the buildings was shuffled — "Wama Property, Inc.”, "Mawash Realty Corp.”, "Justin Property, Inc.”, and "Lescal Realty Corp.” In each he was also principal and, at times, sole shareholder. Whenever Sakow acted for the corporations, he did so in the absence of minutes and without a meeting of the board of directors; for three corporations, minute books and stock certificates had not even been issued at the time of formation. Moreover, the court had before it both an agreement dated February 13, 1975, by the terms of which the "joint venturer”, with whom the appellant previously had shared his corporate stock interest in the buildings, transferred his holdings to Sakow. There was also evidence of such continued ownership by Sakow at the time of trial and nothing to controvert the plain implication that on all the intermediate dates this interest had remained unchanged.
Section 20.25 of the Penal Law provides that "[a] person is criminally liable for conduct constituting an offense which he performs or causes to be performed in the name of or in behalf of a corporation to the same extent as if such conduct were performed in his own name or behalf.” It follows that the corporate barriers on which the appellant relies need not have been accepted as an effective screen behind which Sakow could succeed in shielding himself from culpability for omission to take safety precautions necessary for the welfare of the *136 buildings’ remaining residents and visitors, the occupants of neighboring structures, jeopardized firefighters and others within the range of danger (see People v Dean, 48 AD2d 223; People v Alrich Rest. Corp., 53 Misc 2d 574; cf. People v Trapp, 20 NY2d 613; People v Knapp, 206 NY 373).
It goes without saying that a web of obscurity woven by the interplay of a number of corporations is no more impervious to penetration by the law than is a facade-like single corporation. For, under a statute enforcing the State’s police power to protect life and property, the concern is with substance not form. And, since the essence of the offense here charged was the appellant’s failure to correct hazards after being ordered to do so by the fire department, his culpability was not dependent on affirmative conduct (see Penal Law, § 15.00, subd 4).
The alternate prop on which appellant posits his prayer that his conviction be overturned is his argument that unless the delivery of the violation orders was made in conformity with the requirements of section 491al-2.0 of the code, no conviction could result from his failure to eradicate the conditions they described. The pertinent portions of this section provide that "[ojrders of the department * * * shall be addressed to the owner or owners, lessees or occupants of the building * * * affected thereby. It shall be unnecessary to designate such owner or owners, lessees or occupants, by name * * * but the premises shall be designated in the address, so that the same may be readily identified. Service of any such order may be made by delivery of a copy thereof to the owner or any one of several owners, to a lessee or any one of several lessees, or to any person of suitable age and discretion in charge or apparently in charge of the premises, or if no person be found in charge of the premises then by affixing a copy of such order prominently upon the premises” (emphasis added).
Appellant insists that section 491al-2.0 constitutes a service of process statute whose terms must be strictly complied with before a criminal prosecution may be commenced.* We do not so read it. It is obvious that the purpose of the provision for issuing violation orders is to effect prompt pre *137 vention of conflagrations which may be precipitated by delay in the removal of the known hazards rather than to lay a foundation for criminal prosecution. This may be readily inferred from the code’s concern for the specification of the address rather than the identity of the individuals involved, its inclusion of service upon "any person * * * apparently in charge of the premises” and its provision, as one of the alternative forms of service, for the affixing of a copy to the building. Indeed, as the word "may” indicates, the enumerated forms of service are not necessarily exclusive. Its options for service on those whose relationship to the property, though not an ownership interest, is likely to cause them to act swiftly to ameliorate the condition is not lost on us. To read its language as though validity of service under it is dependent on the minutiae of the listed forms of notice runs counter to its intendment. In short, section 491al-2.0 is to be viewed as a permissive notice section from the service of which other than criminal consequences could flow, such as, for example, direct action by the Fire Commissioner to remove the hazards (§ 491a2-1.0). It is not a condition precedent to prosecution.
Needless to say, the notice could help to establish a defendant’s actual knowledge of the violations of which it complains and whose elimination it seeks. Once brought to his personal attention, it tends to establish the willfulness of a defendant’s conduct. On that subject, the facts relating to the service of the violation orders involved in this case are most instructive.
On May 29, 1975, Edwin Frederick, an attorney, was in the Manhattan Criminal Courts Building representing Sakow and some of the corporations in a related case involving fire violations in the same buildings. Sakow was not present. At that time Frederick had a discussion with Captain Richard Travis, who commanded the fire company responsible for the area where the property was located. The record indicates that, during this discussion, Frederick stated that Sakow wished to clear up the fire department’s complaints, but that he did not have a current list of the violations. Travis thereupon had one of his subordinates compile such a list; these were embodied in the three violation orders on which the present prosecution was predicated.
As permitted by section 491al-2.0, the front of the violation order forms named "Mawash” as "Owner” of the property; on their backs were listed, as "Name of person who received this order”. "Mr. Edwin Frederick for Walter Sakow”. "Owner/ *138 Agent/ Occupant’ ’. It is conceded that Frederick did not delay in reading the orders to Sakow over the telephone. Thus, while the code’s notice provision is largely one allowing for constructive notice, in this case in fact there was actual notice.
For that matter, Frederick’s role did not have to be regarded as simply that of an attorney at law representing a client. Among other things, he had organized the corporations, had been designated as the person (and his office as the place) to whom, service of process on the corporations was to be sent by the New York Secretary of State, had at Sakow’s instance handled the business transactions involved in securing financing for the buildings and had played an active part in shifting the title from corporation to corporation. Where, as here, it was difficult to ascertain who, if anyone, had been put in charge of the buildings, and where efforts to serve Sakow as owner at his listed place of business had been unavailing, in the spirit of the code provision it could be held that Frederick was the person other than the appellant himself most closely approximating one "apparently in charge of the premises”. Though his self-description as one authorized to receive the notice and relay it to Sakow did not constitute proof of that authorization, the fact that he made that representation and that he actually did report it to Sakow forthwith would be further proof consistent with being "apparently in charge” (cf. duPont, Glore Forgan & Co. v Chen, 41 NY2d 794). The code itself contemplates exactly such a communication, going so far as to provide that, if such report is not rendered, the one served is liable to indemnify the owner for the consequences (§ 491al-3.0).
This is not to say that criminal liability is to be imposed on a landlord simply because violation orders have come to his attention. Such liability can, under these sections, only fall on one "who shall wilfully, violate, or neglect, or refuse to comply” (Administrative Code, § 488-1.0). In the present case the facts with regard to the service of the violation orders were relevant to willfulness because at trial these constituted proof on which prior knowledge in Sakow could be grounded. However, since their existence was not a condition precedent to the successful prosecution of the appellant, we are not called upon to decide whether the fashion in which the orders here were served through Frederick was within the scope of the code provisions. Nor is it necessary for us to say whether *139 the Trial Judge’s conclusion that Frederick was actually Sakow’s agent was borne out by the record; for the reasons already indicated, such a finding was unnecessary to the court’s decision.
Finally, having determined that there was a sound legal and factual basis for the conviction, some comments on the sentence are in order. On each count, the court imposed three years’ probation, conditioned on payment of a $1,000 fine and a $250 penalty, correction of the violations and resolution of the appellant’s outstanding traffic summonses. The challenge to these sanctions is based in the main on reiteration of the already rejected argument that “wilfulness” was not established and the sentence was, therefore, illegal. The answer is to be found in the statutes themselves. The Administrative Code denominates the offenses in this case misdemeanors, but it does not specify “the classification thereof or * * * the sentence therefor”. In these circumstances, each is "deemed a Class A misdemeanor” (Penal Law, § 55.10, subd 2, par [b]). One convicted of a class A misdemeanor may be sentenced to three years’ probation and fined $1,000 (Penal Law, § 65.00, subd 3, par [b]; § 80.05). In addition, section 488-1.0 of the Administrative Code authorizes the imposition of a $250 penalty each time a person “knowingly” fails to obey a fire department order. The sentences therefore are within the compass of the law.
For all these reasons, the order of the Appellate Term should be affirmed.

It may be noted that, as distinguished from the violation orders, the present criminal cases were initiated by due service of a summons upon Sakow personally. They were based on accusatory instruments filed against him on January 16, 1976 and February 3, 1976.