# TEXAS COURT OF APPEALS REPORTS.

## AUSTIN TERM, 1890.

### W. T. PURCELLY v. THE STATE.

*No. 6891. Decided May 31.*

1. **Theft—Fraudulent Conversion of Personal Property—Indictment.**—The constituent elements of that species of theft which is defined in article 741a of the Penal Code are: 1. Possession of the property by virtue of a bailment. 2. Fraudulent conversion of the same by the bailee to his own use without the consent of the owner. 3. Conversion by the bailee with the intent to deprive the owner of the value of the property. The "intent to appropriate" the property is not expressly made an element of the offense, as it is in the definition of general theft, and it is therefore immaterial that in attempting to charge the "intent to appropriate" the allegation in this indictment is defective.

2. **Same—Evidence—Charge of the Court.**—The Issue of a Voluntary Return of the Stolen Property not being raised by the evidence in this case, the trial court did not err in refusing to submit to the jury the law of such issue.

3. **Same.**—Having admitted evidence of the contemporaneous theft of other property, the court in its charge should have limited the purpose of such evidence to the question of the defendant's intent with respect to the property described in the indictment. Such omission, however, is not, in the absence of exception, reversible error.

4. **Same—Verdict—Judgment—Sentence.**—The jury rendered a general verdict of "guilty," which, under the statute defining the offense, found the defendant guilty of theft. The judgment of the court declared the defendant "guilty of the fraudulent conversion of a horse," and the sentence follows the judgment. In this respect the judgment and sentence are incorrect, but are reformed to conform to the verdict as "guilty of the theft of a horse," as charged in the indictment.

APPEAL from the District Court of Fannin. Tried below before Hon. E. D. McClellan.

The conviction was for the theft of a horse, and the penalty assessed by the verdict was a term of five years in the penitentiary.

J. D. Thomas testified for the State, in substance, that he and the defendant were cotton pickers on the place of Mr. W. H. Gilbert, in Fannin County, Texas, in the autumn of 1889. On or about October 1 of that year the defendant pretended to be sick, and asked Mr. Gilbert for the loan of a horse on the next day for the purpose of riding to the town of Bailey to procure medicine. Gilbert agreed, but it transpired that he had use for the horse next day, and defendant appealed to the witness for the loan of his horse for the purpose of going to Bailey. Witness consented, and bridled and saddled his horse and delivered him to the defendant to ride to Bailey and back to Gilbert's. Defendant failing to return on that

night, and witness missing his pistol from the place where he kept it, became uneasy and went to Bonham and reported the theft to the officers, offering a reward of $25 for the recovery of the horse and the capture of the thief. The witness failed to hear of defendant in Bailey, but heard of him in Honey Grove. In Honey Grove he ascertained that defendant went to a house where he had previously lived, got all of his effects, exchanged a valise for a pair of saddlebags, and left. Three or four days afterwards witness recovered his horse, saddle, and pistol in Paris, Texas. Witness did not consent for defendant to convert his said horse to his, defendant's, use.

W. H. Gilbert testified for the State, in substance, that defendant, then in his employ, asked him on the evening of October 1, 1889, to lend him on the next day a horse to ride to Bailey to get some medicime. Witness agreed to do so, but having use for his animal on the next day, had to recall that promise. Defendant thereupon borrowed a horse from J. D. Thomas, and left, ostensibly to go to Bailey and return. Witness next saw defendant on his examining trial in Bonham.

William Ashby testified for the the State, in substance, that he was an officer of the law and lived in Lamar County, Texas, about fifteen miles north from Paris. The defendant, traveling horseback and going eastward, passed the house of witness during the afternoon of October 1 or 2, 1889. The witness for some reason suspected that he was a horse thief, and accordingly sent Charles Corgan to overtake defendant and ascertain, if he could, if the defendant knew anything of a mule he, witness, had lost. Corgan and defendant came to witness's house about dark on that evening, and Corgan, winking at witness, asked if he and defendant could stay all night. Witness replied that they could. Accordingly they went to the lot and unsaddled their animals, which they put up. On their return to the house, Corgan, in the presence and hearing of defendant, told witness that he could hear nothing of the lost mule, but that defendant had admitted to him that he had stolen the horse he was riding. The witness thereupon arrested the defendant.

On cross-examination the witness stated that after his arrest the defendant told him that he had stolen the horse and that he wanted to return it to its owner, and wanted Corgan to go with him to Fannin County for that purpose. Corgan afterwards told witness that when defendant confessed to him that he had stolen the horse he expressed a desire to return the animal to its owner, and requested him, Corgan, to accompany him to Fannin County for that purpose. Witness found a pistol on the person of defendant, which, together with the horse and saddle, he took to Paris, where all the property described was identified and claimed by and delivered to J. D. Thomas.

Deputy Sheriff George Frees testified for the State, in substance, that

he had a conversation with defendant after he was placed in jail.  Witness first cautioned the defendant that whatever statement he might make about the matter charged against him could be used in evidence against him.    Defendant then told the witness that he borrowed the horse from Thomas to ride to Bailey to get some medicine; that after reaching Bailey he became anxious to visit his home, and determined to ride the horse to his said home in Arkansas; that after crossing Red River he found that the United States marshals were scouting the Indian Territory for malefactors, wherefore he recrossed the river into Texas, and was arrested.

Testifying in his own behalf, the defendant detailed the transaction whereby he came into possession of the horse substantially as Thomas did. Proceeding, he stated that after obtaining medicine and leaving Bailey to return to Gilbert's house he conceived the purpose of going to his home in Arkansas.    After crossing the Red River his conscience smote him, and he decided to return and deliver up the horse.    Accordingly he recrossed the river and traveled some miles in the direction of Gilbert's, but became stricken with shame and his courage failed him, whereupon he again turned and went towards Arkansas.    Before crossing the river, however, his first impulse to take the horse back to Thomas returned, and he started back to Gilbert's again.    Near Ashby's house he encountered Corgan, whom he did not then know.    Corgan turned back with witness, and proposed to witness to pass the night at Ashby's, it then being late. Witness consented, at the same time telling Corgan that he had ridden another man's horse away from Fannin County; that he was then on his way back to return the horse to its owner, and asked Corgan to go with him to Fannin County for that purpose.    Soon after reaching Ashby's house the witness was arrested, when he made the same statement about the horse to Ashby that he had previously made to Corgan, and asked Ashby to let one of his hands go with him to Fannin County for the purpose of returning Thomas's property.

On cross-examination the witness said that he also took off a pistol belonging to Thomas, but that he did so at Thomas's request, and for the purpose of getting some cartridges to fit it for Thomas.    This statement was positively denied by Thomas, who was called by the State in rebuttal. Thomas testified that he needed no cartridges, and that he did not know his pistol was taken away from Gilbert's house until after the defendant left.

*W. A. Dunn,* for appellant.

*W. L. Davidson,* Assistant Attorney-General, for the State.

WILLSON, JUDGE.—This conviction is under Article 741a of the Penal

Code, which reads as follows: "Any person having possession of personal property of another by virtue of a contract of hiring or borrowing, or other bailment, who shall without the consent of the owner fraudulently convert such property to his own use with intent to deprive the owner of the value of the same, shall be guilty of theft," etc.

It is charged in the indictment that the defendant did obtain and acquire from J. D. Thomas the possession and custody of a horse by virtue of a contract of borrowing, and did borrow said horse from said J. D. Thomas for temporary use, said Thomas being the owner and in possession of said horse; that afterwards the defendant, while in possession of said horse under said contract of borrowing, did fraudulently convert and appropriate said horse to his own use and benefit, without the consent of the said J. D. Thomas, and with the intent to deprive the said J. D. Thomas of the value thereof, and to *appriate* the same to the use and benefit of him, the said defendant.

It will be observed that in defining this species of theft an *"intent to appropriate the property"* is not expressly made an element of the offense, as it is in the definition of theft in general. To constitute this offense the following are the essential elements: 1. Defendant must have possession of the property by virtue of a contract of bailment. 2. He must, without the consent of the owner, fraudulently convert the property to his own use. 3. Such conversion must be with intent to deprive the owner of the value of the same. These elements are fully and directly alleged in the indictment, and in our opinion make the indictment sufficient. It was unnecessary we think to allege an intent to appropriate the property, and it is immaterial therefore that the allegation of such intent as made in the indictment is defective. We think the indictment is in conformity with the statute and in all respects sufficient.

We do not think that the evidence raises the issue of a voluntary return of the stolen horse, and it was not error, therefore, for the court to refuse to submit the law of such issue to the jury, as requested by defendant.

While the charge of the court should have limited the jury in considering the testimony as to the stolen pistol and saddle to the question of defendant's intent with respect to the horse, no exception was reserved to the charge, nor was any instruction upon this point requested by defendant. We do not consider the error a material one for which the conviction should be disturbed. Gentry v. The State, 25 Texas Ct. App., 614.

By the verdict the defendant is found guilty, which means guilty of the offense charged in the indictment, which offense is declared by the statute defining it to be theft. By the judgment he is adjudged to be guilty of the "fraudulent conversion of a horse," and the sentence in naming the offense follows the judgment. In this respect the judgment and sentence are incorrect, and they are here reformed so as to show that the offense

of which defendant has been adjudged guilty and for which sentence has been pronounced against him is theft of a horse, as charged in the indictment.    Code Crim. Proc., art. 869.

As reformed the judgment of conviction is affirmed.

*Affirmed.*

Judges all present and concurring.