SMITH *v.* STATE.

4675             245 S. W. 2d 226

Opinion delivered January 14, 1952.

Rehearing denied February 11, 1952.

*Fred M. Pickens* and *George H. Steimel,* for appellant.

*Ike Murry,* Attorney General and *Dowell Anders,* Assistant Attorney General, for appellee.

WARD, J. On or about August 1, 1949, appellant became an employee of Smith & Spencer Motors [at Pocahontas], a partnership composed of Elwood Smith (a nephew of appellant) and R. L. Spencer, which partnership was engaged in operating a garage and in buying and selling new and used cars. Appellant's duties were to keep records, handle cash, pay bills, etc., and he, as well as the two partners, was authorized to sign checks on the company. Sometime prior to March 9, 1951, when appellant left the employment of the company, his nephew, Elwood Smith, discovered what appeared to be irregularities in the books and Paul Johnston, a certified public accountant, was employed to make a cash audit of the partnership's books. This audit revealed a shortage of $7,714.57 and on June 15, 1951, information was filed charging appellant with the embezzlement of said amount and also charging him [under Ark. Stats. § 41-3927] with grand larceny by embezzlement on fourteen separate counts setting out as many separate offenses dating from February 14, 1950, to January 31, 1951.

Trial was had on July 19, 1951, and appellant was found guilty of grand larceny by embezzlement, as charged in the information, and was sentenced to three years in the penitentiary, hence this appeal.

For a reversal appellant first insists the lower court committed reversible error in refusing to grant a continuance. The transcript contains the motion for a continuance, the material part of which is as follows: "The defendant is unable at this time to prepare his defense because all of the books, papers and evidence have been and are yet in the hands of the prosecuting witnesses, and it is impossible for this defendant to prepare his defense until said records have been made available for his use so that a complete audit can be made." The motion contains no filing date, but it was verified on July 14, 1951, which date we find to be a Saturday. We assume, in view of the court's language quoted below, it was first presented to the court on the following Monday. Since the court's statement, in overruling the motion, appears to be in accord with the facts, and since we agree with the conclusion and reasons therein mentioned it is herein copied as follows:

"This charge was filed on June 15th, 1951, and the defendant was arrested immediately thereafter. We had a pre-trial session of this court on date of July 2nd, 1951, at which time the whole docket was called, and steps taken in several cases, and, likewise, on July 7th, we had another pre-trial session, at which a similar proceeding was followed; not until the first day of the regular July term of the court, on July 16th, was a motion for continuance filed, and, it was, at that time, overruled. On that day the defendant did file a motion for a subpoena *duces tecum* for the records and papers in the custody of the firm of Smith & Spencer Motors, and that motion for subpoena *duces tecum* was granted. The court, now, on this date of July 19th, the defendant having renewed this motion for a continuance, the Court thinks, under all the circumstances, the motion should be overruled." To the above ruling of the court the defendant further objected, in open court, that he *thought*, on July 2nd, this

case would not be tried at that time, but he set out no facts [and there are none in the record] to warrant that impression. Moreover, in the same statement, he admitted that on July 7th the case was set for trial on the 19th. He further stated, however, that a civil action (a suit by Smith & Spencer Motors against him which involved the same accounting) was, on July 7th, set for trial on July 17th and that when he moved to transfer it to equity the plaintiffs took a nonsuit without prejudice. By all this, says appellant, he has been misled into a state of unpreparedness. We cannot agree that appellant's contention is warranted under the facts and circumstances set out above. The matter of granting or refusing a continuance lies within the sound discretion of the trial court. In *Allison* v. *State,* 74 Ark. 444, 86 S. W. 409, Judge RIDDICK, speaking for the court, said: "It has often been decided that whether a case should be continued or not is generally a matter within the sound discretion of the trial court. Its refusal to grant a continuance is never a ground for a new trial unless it clearly appears to have been an abuse of such discretion, and manifestly operates as a denial of justice." Numerous later decisions of this court have affirmed this rule. Also, as held in *Jones* v. *State,* 205 Ark. 806, 171 S. W. 2d 298, there was a duty on appellant to show due diligence which the court had a right to consider in the proper exercise of its discretion.

The only other contention for a reversal is that there is a general insufficiency of evidence to sustain the verdict of the jury. The rules by which this contention must be considered are well established by many decisions of this court. The verdict of the jury must stand if it is supported by substantial evidence. *Spears* v. *State,* 173 Ark. 1071, 294 S. W. 66; *Bird* v. *State,* 175 Ark. 1169, 299 S. W. 40. The jury is the sole and exclusive judge of the credibility of witnesses and the weight of their testimony. *Herron* v. *State,* 202 Ark. 927, 154 S. W. 2d 351; *Waterman* v. *State,* 202 Ark. 934, 154 S. W. 2d 813. The evidence will be viewed by this court in the light most favorable to sustain a conviction. *Cook* v. *State,*

196 Ark. 1133, 121 S. W. 2d 87; *Ahart* v. *State,* 200 Ark. 1082, 143 S. W. 2d 23.

Viewed in the light of the above announced rules it is our opinion that there is substantial evidence to sustain the verdict of the jury. The testimony, somewhat voluminous, on the part of the state was given principally by the two partners, R. L. Spencer and Elwood Smith, and by Paul Johnston, C. P. A. Johnston testified that he made a cash audit of the books of the partnership from the date the defendant started his employment until he quit; that it charged defendant with all money shown to have come into his hands and credited him with all money he deposited in the bank to the credit of Smith & Spencer Motors; and that it showed a shortage, or a charge to defendant, of $7,714.57, *i. e.,* the defendant had taken in that amount in excess of what he had deposited in the bank. The testimony further showed several instances where defendant had cashed checks, over and above his salary checks, on the partnership and apparently kept the money or used it to pay personal debts. In most instances defendant's only explanation was that he had personally loaned money to the firm and was merely repaying himself, although he made no book entries showing any such personal loans to the partnership. Both partners stated they knew nothing about such loans by defendant and he admitted they never called on him for any of his personal money. On one occasion a check for $500 which defendant cashed was not honored by the bank for lack of funds. In adjusting the matter the partners and the bank cashier said defendant claimed the check had been forged by his brother-in-law, although the cashier stated the signature appeared to be that of defendant. Defendant denied the alleged statement involving his brother-in-law, but made the check good. The partners testified that although they had a good business during the employment of defendant they continually had financial troubles, but that it was different after he left. They also stated that defendant, during this time, was engaged in the used car business in another town, but they did not know it. No particular part of the testimony is called to our attention in appellant's

brief and we have only referred to so much as, in our opinion, is sufficient to support the verdict of the jury.

Appellant calls attention to *Fleener* v. *State,* 58 Ark. 98, 23 S. W. 1, contending it calls for a reversal of this case. There a conviction for embezzlement was reversed because the lower court refused defendant's instruction which stated, in effect, that the mere failure to pay over money at the proper time would not, of itself, constitute embezzlement, and that it must appear that the defendant retained the money by attempting in some way to conceal it, or by falsely and fraudulently keeping his accounts, etc. Defendant cannot take full advantage of the *Fleener* case here for the reason that no such instruction was requested and, in fact, no exceptions were saved to any instructions. Had the situation been otherwise we still think there is here sufficient evidence for the jury to find it met the requirements of the instruction mentioned above.

Finally appellant insists it is essential to the crime of embezzlement that there be a fraudulent intent on the part of a fiduciary to convert the property to his own use, and that no such intent is shown here. It is true that *intent* is an essential part of the crime of embezzlement, but, as stated in *Gurley* v. *State,* 157 Ark. 413, 417, 248 S. W. 902, 904, *intent* may be inferred [by the jury] from the act of wrongful conversion. To the same effect is *Heath* v. *State,* 207 Ark. 425, 181 S. W. 2d 231.

Affirmed.