Argued June 14, reversed and remanded November 16, 1960

## STATE OF OREGON *v.* HANNA
356 P. 2d 1046

*Dan M. Dibble,* Portland, argued the cause and filed a brief for appellant.

*Keith Burns,* Deputy District Attorney, Portland, argued the cause for respondent. On the brief were Charles E. Raymond, District Attorney, Portland, and Oscar D. Howlett, Deputy District Attorney, Portland.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL and MILLARD, Justices.

O'CONNELL, J.

This is an appeal from a judgment of conviction of the crime of embezzlement by bailee which is defined in ORS 165.010. On May 9, 1958 defendant purchased a television set from Holman's Furniture and Appliance Co. located in Portland. The sale price was $129.95. The set was sold under a conditional sales contract which provided that defendant was to pay $70 on June 1st and the balance of $59.95 on July 1st, title to remain in the seller until the entire purchase price was paid. The contract also provided that the purchaser was not to sell or dispose of the property until it was fully paid for.

On the same day that defendant purchased the set

he took it to the Third Avenue Loan Company, where he surrendered possession to the loan company. The testimony is in conflict as to whether defendant pawned or sold the set.

■ The defendant presents several assignments of error, only one of which need be considered. The trial court instructed the jury that

"* * * a criminal intent, as that term is ordinarily used, is not required for the commission of the crime of larceny by bailee or purchaser. It is sufficient that the defendant intended to sell or to convert to his own use the property involved."

This was an erroneous instruction. Criminal intent is necessary to make out the crime described in ORS 165.010 under which the defendant was convicted. The crime charged is embezzlement. The state must prove specific intent, i.e., the intent to deprive the owner of his property. As expressed by Perkins, Criminal Law, p 817 (1957):

"* * * This intent, while perhaps not strictly an intent to steal, is an intent to deprive the owner of his property and is for practical purposes the counterpart of the *animus furandi* required for larceny. Hence the unauthorized retention of the property of another under a bona-fide claim of right is not embezzlement even if the error is one of law."

He also states, at page 247:

"The general statutes on embezzlement, as interpreted, ordinarily include all the elements of larceny other than the trespassory taking of possession. Hence they include the *animus furandi* or intent to deprive the other of his property. A mere unauthorized use by a bailee or wilful delay in returning the property will not of itself constitute this offense. There must be an intent to deprive the other of his property entirely. In fact, in stat-

utes having the rather common provision, 'whoever embezzles or fraudulently converts to his own use,' the 'or' clause is to be understood as explanatory rather than additional, because the word 'embezzle' means to convert fraudulently to one's own use."

■ The state relies upon *State of Oregon v. Cahill*, 208 Or 538, 560, 293 P2d 169, 298 P2d 214 (1956), cert. denied, 352 US 895, 77 SC 132, 1 L Ed2d 87 (1956), for the proposition that a criminal intent is not an essential element of the crime defined in ORS 165.010. In that case the crime charged was the conversion of public funds, the crime now defined in ORS 165.015. The crime of conversion of public funds, unlike the crime of embezzlement, has been generally regarded as not requiring proof of a specific intent to defraud. As explained in Perkins, Criminal Law, pp 247-249 (1957), this offense is considered to be a special type of crime designed to hold public officers strictly accountable for the conversion of public funds, even though they may not embezzle or fraudulently convert the property. The Cahill case, which involved the conversion of public funds by a public officer, followed the general rule and held that criminal intent was not an essential element of the crime now defined in ORS 165.015. Unfortunately, the opinion also contains a dictum which is erroneous. It is stated that an intent to defraud is not necessary to make out the crime described in ORS 165.010 (embezzlement by bailee, etc.). For this conclusion the court relied principally upon *State v. Stiles*, 81 Or 497, 160 P 126 (1916); *State v. Chapin*, 74 Or 346, 114 P 1187 (1915), and *State v. Ross*, 55 Or 450, 104 P 596, 106 P 1022 (1910), *appeal dismissed, Ross v. Oregon*, 227 US 150, 33 SC 220, 57 L Ed 458 (1913).

Other cases later cited as support for the same

proposition all involved conversion of public funds. The error began with *State v. Chapin,* supra. There it was held that the intent to defraud was not a necessary element of the crime of embezzlement described in ORS 165.010. This conclusion was based upon the authority of *State v. Ross,* supra, and *Purcelly v. State,* 29 Tex App 1, 13 SW 993 (1890). The Ross case was not in point because it involved the crime of converting public funds, which, as we have pointed out above, is a distinct offense which may not require proof of the intent to defraud. The Purcelly case was not authority for the proposition relied upon; it held that for the defendant to be liable for the crime of embezzlement, "he must, without the consent of the owner, fraudulently convert the property to his own use." 29 Tex App at 4, 13 SW at 994. We should not perpetuate the error made in these earlier cases. See also *McNeff v. Heider,* 216 Or 583, 337 P2d 819, 340 P2d 180 (1959). To the extent that our previous cases hold that a criminal intent is not a necessary element of the crime of embezzlement by bailee as defined in ORS 165.010, they are overruled.

The position we now take can be justified on the following grounds. First, our interpretation of ORS 165.010 makes it consistent with ORS 165.005, which defines the closely related crime of embezzlement by an officer, agent, servant or fiduciary. Our cases establish that criminal intent is necessary to make out the crime defined in this latter statute. *State v. Johnston,* 143 Or 395, 399, 402, 22 P2d 879 (1933); *State v. Coleman,* 119 Or 430, 435, 249 P 1049 (1926); *State v. Browning,* 47 Or 470, 472-73, 82 P 955 (1905); *State v. Marco,* 32 Or 175, 177, 50 P 799 (1897). On principle there is no reason for making intent a necessary element of the crime under ORS 165.005 and dispensing

with the requirement under ORS 165.010. In fact, there would be more justification for dispensing with the element of intent where the conversion is committed by one in a fiduciary capacity (ORS 165.005) than where the conversion is by a bailee, mortgagor or conditional vendee (ORS 165.010). That is, it would be logically defensible to hold a party who occupies a position of trust to a stricter measure of accountability.

Secondly, ORS 165.010 as construed by *State v. Chapin*, supra, would impose absolute criminal liability upon the converter. It is generally conceded that the imposition of strict liability in the criminal law is not desirable, at least when the offense is other than a mere "regulatory crime." And this is especially so when the penalty is imprisonment. *Morissette v. United States*, 342 US 246, 72 SC 240, 96 L Ed 288 (1952); Model Penal Code, § 2.05, comment (Tent. Draft No. 4, pp 140-146) (1955); Hall, General Principles of Criminal Law, 304-5 (1947); Williams, Criminal Law §§ 70-76 (1953); Public Welfare Offenses, 33 Colum L Rev 55 (1933); Sayre, Mens Rea, 45 Harv L Rev 974 (1932); Hart, The Aims of Criminal Law, 23 Law & Contemporary Problems 401, 422-25 (1958); Perkins, The Civil Offense, 100 Pa L Rev 832 (1952); Gausewitz, Reclassification of Certain Offenses as Civil Instead of Criminal, 12 Wis L Rev 365 (1937). Cf., Wasserstrom, Strict Liability in the Criminal Law, 12 Stan L Rev 731 (1960). Therefore, unless it clearly appears that the legislature intended to impose criminal liability for the acts described in ORS 165.010 without proof of intent to defraud, we should construe it to include the requirement of such intent and thus make the statute conform to a sound theory of criminal liability.

■ The absence of an express provision in the stat-

ute for the element of intent should not be regarded as evidence of a legislative purpose to dispense with it as an essential element. As Williams, Criminal Law § 76, p 270 (1953) ably expresses it:

"Every criminal statute is expressed elliptically. It is not possible in drafting to state all the exceptions and qualifications that are intended. One does not, for instance, when creating a new offence, enact that persons under eight years of age cannot be convicted. Nor does one enact the defence of insanity or duress. The exemptions belong to the general part of the criminal law, which is implied into specific offences. * * * Now the law of mens rea belongs to the general part of the criminal law, and it is not reasonable to expect Parliament every time it creates a new crime to enact it or even to make reference to it."

From this premise it seems reasonable to conclude, as does the reporter for the Model Penal Code, op. cit. supra, p. 140:

"* * * The liabilities involved are indefensible in principle, unless reduced to terms that insulate conviction from the type of moral condemnation that is and ought to be implicit when a sentence of imprisonment may be imposed. In the absence of minimal culpability, the law has neither a deterrent nor corrective nor an incapacitative function to perform.

"* * * Crime does and should mean condemnation and no court should have to pass that judgment unless it can declare that the defendant's act was wrong. This is too fundamental to be compromised. The law goes far enough if it permits the imposition of a monetary penalty in cases where strict liability has been imposed."

We find nothing in the language of ORS 165.010 or in the history of its enactment to suggest that the legis-

lature intended to impose absolute liability for the *actus reus* therein defined. The Model Penal Code reporter's criticism of statutes which permit the imposition of a penalty of imprisonment without proof of criminal intent may well be levied at ORS 165.015 which carries a maximum penalty of 15 years imprisonment, plus a fine of twice the amount converted. However, we do not have that statute before us and, therefore, it is not necessary for us to re-examine it at this time.

In holding that the statute under consideration impliedly requires an intent to defraud, we are not indulging in an unusual construction. Similar statutes, both federal and state, have generally been so construed. *Marteney v. United States*, 218 F2d 258, 263 (10th Cir 1954), cert. denied, 348 US 953, 75 SC 442, 99 L Ed 745 (1955) ("Wilful conversion as used in Section 714m(c), is a crime in the nature of a theft and falls within that class of cases requiring [a] specific wrongful intent * * *"); *Morissette v. United States*, supra; *Masters v. United States*, 42 App Cas (D.C.) 350, 355, 1916A Ann Cas 1243 (1914); *State v. Parker*, 112 Conn 39, 151 A 325, 330-331 (1930); *People v. Riggins*, 13 Ill2d 134, 138, 148 NE2d 450 (1958); *State v. Eastman*, 60 Kan 557, 57 P 109-110 (1899); *State v. McLean*, 209 NC 38, 182 SE 700-701 (1935); *People v. Dalsis*, 5 App Div2d 28, 168 NYS2d 549, 555 (1957); *People v. Shears*, 158 App Div 577, 143 NYS 861, 864 (1913), affirmed 209 NY 610, 103 NE 1129 (1913); 2 Bishop, Criminal Law § 379 (2) (9th ed 1923). For a discussion of the policy of justifying the implication of criminal intent in statutes of this type, see *Morissette v. United States*, supra at pages 250-263.

■■ The burden of proving the intent required by

ORS 165.010, as we have construed it, must, of course, be borne by the state. The correct statement of the rule is set forth in *State v. Littschke*, 27 Or 189, 193-94, 40 P 167 (1895) :

"* * * A felonious intent is an essential ingredient of the crime charged in the indictment, and is always a question for the jury. Without a felonious and criminal intent on the part of the defendant, there could have been no crime, although there may have been a breach of trust, and although Liebe's claim to the money may constitute no defense in a civil action by Mrs. Hess to recover possession, because of the rule that a bailee cannot dispute the title of his bailor. But this is a criminal prosecution, and the conversion by the defendant must not only have been a tortious act, but it must have been with a felonious intention, and this, as we have already said, was a question of fact for the jury under all the circumstances of the case. If he was the bailee of Mrs. Hess, and in good faith retained possession of the money, and refused to pay it over to her because of Liebe's claim and demand, but with no intention of converting it to his own use, he cannot be convicted of the crime charged in the indictment, because in such case there would be an entire absence of the felonious or criminal intent which is an essential ingredient of the crime."

But the proof of fraudulent intent need not be direct; it may be inferred from the defendant's act of selling or pledging the property entrusted to his possession. The requisite intent may be proved by "(1) an intent to do the *actus reus*, and (2) no circumstance of exculpation." Perkins, Criminal Law (1957), p 657. If the state proves that an act proscribed by the statute has been committed, it has made out a prima facie case sufficient for submission to the jury. The rule is summarized by one writer as follows:

"Thus it seems to be necessary to prove only

some one of all the innumerable acts in that almost infinite range of behavior called conversion, and a prima facie case of intent to defraud is established, leaving the accused no comfort in sitting mute but necessitating his making some explanation of his conduct * * *." Snyder, Equity Principles in Embezzlement Prosecutions, 30 Ill L Rev 995, 1004-1005 (1936).

Numerous cases have recognized this principle of proof. Thus in *Mangham v. State,* 11 Ga App 427, 436, 75 SE 512 (1912), frequently cited, the court stated:

"* * * The fraudulent intent will be inferred from a temporary individual use of trust funds, and the act, prima facie at least, will be branded as embezzlement * * *. The law calls such a transaction a wrongful conversion, from which a criminal intent can be inferred. * * * [Defendant's course of dealing] placed upon him the burden of showing that the balance was at all times in his favor."

The same idea is variously stated in other cases: *Gurley v. State,* 157 Ark 413, 417, 248 SW 902 (1923) ("a jury may infer a criminal intent from the act itself"); *Chance v. State,* 31 Ga App 543, 121 SE 139, 140 (1924) ("The law calls such a transaction a wrongful conversion, from which a fraudulent intent can be inferred, provided the jury believe that such fraudulent intent actually existed" held to be a proper instruction); *White v. People,* 76 Colo 208, 210, 230 P 614 (1924) ("An unlawful and unexplained conversion will support an inference of felonious intent"); *State v. Smith,* 135 Mont 18, 24, 334 P2d 1099, 1102 (1959) ("The intent required, of course, may be found from the facts and circumstances surrounding the transaction"); *Smith v. State,* 219 Ark 829, 245 SW2d 226, 229 (1952) ("*intent* may be inferred [by the jury] from

the act of wrongful conversion"); *People v. Talbot*, 220 Cal 3, 14, 28 P2d 1057 (1934) ("The element of felonious intent in every contested criminal case must necessarily be determined from the facts and circumstances of the case"); *Commonwealth v. Shilladay*, 311 Ky 478, 224 SW2d 685, 687 (1949) ("Of course, criminal intent may be gathered from expressly proven acts of the accused and surrounding circumstances."); *Heath v. State*, 207 Ark 425, 429-430, 181 SW2d 231, 233 (1944) ("where there has been a wrongful conversion of a fund criminal intent to embezzle may be inferred from the act itself").

The permissible inference of guilty intent from the conversion is sometimes inappropriately described as a "presumption": *State v. Kortgaard*, 62 Minn 7, 16, 64 NW 51 (1895) ("If the fraudulent intent is not to be presumed from the commission of an unlawful act, it would be very difficult in any case to prove the intent to embezzle * * *"); *Spalding v. The People*, 172 Ill 40, 56, 49 NE 993 (1898) ("yet if a man commits the act of embezzlement the presumption is that he means to embezzle"); *The People v. Barrett*, 405 Ill 188, 197-198, 90 NE2d 94 (1950) ("Great latitude is allowed in proving intent * * * but a defendant charged with embezzlement should be permitted to show in his defense such facts as tend to rebut the presumption that he intended to commit the crime"); *Enzor v. State*, 27 Ala App 60, 63, 167 So 336 (1936) ("where the prosecution has made a prima facie case of embezzlement as by proving facts which give rise to a presumption in its favor * * * it becomes incumbent upon the defendant to offer evidence in denial or explanation of the incriminating circumstances").

The same principle is expressed in cases involving crimes other than embezzlement: *United States v.*

*Polonio*, 77 F Supp 768, 772 (D. C. Or 1941) ("If an act is denounced by the law as criminal if characterized by a specific mental state, a sufficient case is made to go to the jury if it be shown that a person has done the act, then the mental state is a question for the jury without further proof"); *State v. Benny*, 20 N J 238, 256, 119 A2d 155 (1955) ("It has long been held that guilty knowledge may be inferred from the defendant's conduct and the circumstances of the case * * * and it is for the jury to decide whether it exists beyond the required reasonable doubt.").

The inference of guilty intent may, of course be rebutted: *State v. Littschke*, supra, 27 Or at 193 ("If he [defendant] was the bailee of Mrs. Hess, and in good faith retained possession of the money, and refused to pay it over to her because of Liebe's claim and demand, but with no intention of converting it to his own use, he cannot be convicted of the crime charged in the indictment, because in such case there would be an entire absence of the felonious or criminal intent which is an essential ingredient of the crime."); *White v. People*, supra, 76 Colo at 210 ("but an unlawful conversion alone is never conclusive as against the defense of good faith, supported by evidence of an honest claim of right"); *Enzor v. State*, supra, 27 Ala App at 63 ("it was a matter of defense to rebut the fraudulent intent by showing an honest disposition of the proceeds"); *McKinney v. State*, 104 Tex Crim 315, 321, 283 SW 798 (1925) ("it devolved upon him to show such excuse for failure to comply with the requirements of the law"); *People v. Barrett*, supra, 405 Ill at 197-198 ("but a defendant charged with embezzlement should be permitted to show in his defense such facts and circumstances as tend to rebut the presumption that he intended to commit the crime").

■ On the basis of the view expressed in *State v. Chapin*, supra, and *State v. Cahill*, supra, the trial court was justified in giving the instruction in question. But we are of the opinion that the position taken in those cases is unsound and that the defendant in the case at bar is entitled to have the question of his guilt or innocence submitted to the jury upon an instruction which properly defines the crime of embezzlement by bailee.

The judgment is reversed and the cause is remanded for a new trial.

PERRY, J., dissenting.

I am unable to agree with the majority's interpretation of ORS 165.010.

In my opinion, the criminal intent involved in ORS 165.010 is an entirely different intent from that element of the crime denounced in ORS 165.005. If we construe the intent in each as an intent to defraud, we do violence to the language of the statute, and usurp the legislative prerogatives. ORS 165.005 has always been held to require an intent to defraud. *State v. Johnston*, 143 Or 395, 399, 402, 22 P2d 879; *State v. Coleman*, 119 Or 430, 435, 249 P 1049; *State v. Browning*, 47 Or 470, 82 P 955; *State v. Marco*, 32 Or 175, 50 P 799. This because the legislature provided therein as explanatory of the word "embezzlement" the words "fraudulently converts to his own use." The pertinent parts of ORS 165.005 read as follows:

> "Any officer, agent, clerk, employe or servant of any person, partnership, association or any guardian, conservator, administrator or executor of any estate, any assignee for the benefit of creditors, or trustee or any other person acting as fiduciary who *embezzles or fraudulently converts to his own use, or takes or secretes with intent to embezzle*

*or fraudulently convert* to his own use, any money, property or thing belonging wholly or in part to such person, partnership, association, estate, creditors or debtor, * * *." (Italics supplied)

In ORS 165.010, which sets forth the crime for which the defendant was charged and convicted, the legislature, instead of using the explanatory words for the embezzlement, "fraudulently converts to his own use," provided "wrongfully converts to his own use." The pertinent parts of ORS 165.010 read as follows:

"Any bailee, with or without hire, including every mortgagor of personal property having possession of property mortgaged, or any purchaser or lessee of personal property obtaining the possession thereof under a written or printed contract of conditional sale providing that title thereto shall not vest in the purchaser until the unpaid balance of the purchase price is wholly paid for, and before it is wholly paid for, *who embezzles or wrongfully converts* to his own use, or secretes or conceals with intent to convert to his own use, or injures, destroys, sells, gives away or removes from the county where situated when obtained, without the written consent of the bailor or vendor, * * *." (Italics supplied)

The words "fraudulent" and "wrongful" are not generally understood as synonymous or equivalent terms. Webster's New International Dictionary, 2nd ed., defines "fraudulent" and "wrongful" as follows:

"Fraudulent. 1. Using fraud; tricky; deceitful. 2. Characterized by, founded on, or proceeding from, fraud; of the nature of fraud. 3. Obtained or performed by artifice. Syn. Guileful, crafty, wily, cunning, deceiving, cheating, deceptive, insidious, treacherous, designing."

"Wrongful. 1. Full of wrong; injurious; unjust; unfair; as, wrongful acts or dealings. 2. Not rightful, esp. in law; unlawful; illegitimate; without legal sanction; * * *"

See also Black's Law Dictionary. For an interesting discussion of the use of the word "wrongfully" as used in statutes see *Traxler v. State*, 96 Okla Cr 231, 251 P2d 815.

The words descriptive of the crime in each of the statutes is different. The crime described in ORS 165.010 is not merely a conversion, but one that is wrongful. It implies an evil intent or the act of an evil mind not necessarily to defraud, although that may be the result, but to do an act prohibited by the statute itself. Conversion is effected by any exercise of a right of ownership inconsistent with the true owner's rights and the nature and purpose of the trust. 29 CJS 683, Embezzlement § 11. The particular wrongful acts which constitute a conversion, and thus a violation of the trust, are specifically set out in the statute itself. Thus it appears the criminal intent is the intent to violate the statute and to use the property as one's own without color of right or lawful excuse. This distinction between a wrongful intent and a fraudulent intent is pointed out in *Patterson v. United States*, 39 Appeal Cases Dist of Columbia 84. See also *Masters v. United States*, 42 Appeal Cases Dist of Columbia 350, 39 Ann Cas 1916 A 1243.

This distinction was fully recognized in the case of *State v. Chapin*, 74 Or 346, 144 P 1187, which the majority overrule. The majority correctly state that the cases cited therein (*State v. Ross*, 55 Or 450, 104 P 596, 106 P 1022, 42 LRA NS 601, and *Purcelly v. State*, 29 Tex App 1, 13 SW 993) have reference to the conversion of public funds, but when considered in context with the thought to be conveyed they are quite applicable. They were cited to show, where criminal intent to defraud is not a necessary element of the crime charged (embezzlement), the "violation of the

terms of this statute constitutes the offense, and no other intent need be shown." *State v. Ross,* supra, 55 Or 450, 473. In other words, the intent is the wrongful intent to do an act prohibited by the statute, whether the offending party benefits thereby or not.

This court has been very careful to maintain the distinction engrafted into the two statutes by legislative declaration. This is shown by the cases of *State v. Cahill,* 208 Or 538, 560, 293 P2d 169, 298 P2d 214, 352 US 895, 77 SC 132, 1 LE2d 87, *State v. Stiles,* 81 Or 497, 160 P 126, and *State v. Chapin,* supra. These cases are concerned with embezzlements by bailors under the specific bailment relationship set forth in ORS 165.015. The statute under which Chapin was convicted was the same in context as ORS 165.015. (See 1 LOL 883, § 1956). *State v. Johnston,* supra, *State v. Coleman,* supra, *State v. Browning,* supra, and *State v. Marco,* supra, all deal with an embezzlement by officers, agents, and employees who were indicted and convicted under statutes then in force (see 1 LOL 882, § 1955) which are identical with ORS 165.005 and required an intent to defraud.

Certainly this court cannot impute to the legislators the fact that they did not understand the distinction to be drawn between the use of the words "fraudulently converts" in one statute, dealing with an embezzlement, and the words "wrongfully converts" in another statute, dealing with a similarly named crime, but relating to a different relationship of the parties.

This is especially true when it must be presumed the legislature knew of the interpretation placed upon each of the statutes by this court and, with this knowledge, never revised the wording of either.

To abandon the distinction engrafted into these

statutes by legislative enactment, and followed by the prior decisions of this court, and to substitute our own beliefs as to what the law should be in such fashion, is, in my opinion, very wrong.

I therefore dissent.