Argued July 28, affirmed September 18, petition for rehearing
denied October 17, 1972, petition for review
denied January 17, 1973

# STATE OF OREGON, *Respondent, v.*
# JESSE LEWIS JONES (No. C-59800),
*Appellant.*

500 P2d 1225

*Ronald J. Loew,* Portland, argued the cause for appellant. With him on the brief were Kevin O'Connell and O'Connell, Goyak & Haugh, P.C., Portland.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

FORT, J.

Defendant and Melvin Luther Cox were jointly indicted for felony murder arising out of a shooting in the course of an armed robbery. Former ORS

163.010. Defendant was tried separately and convicted by a jury. He appeals from the resulting judgment, asserting three assignments of error.

A brief summary of the facts is necessary to an understanding of the principal issue—the failure to give a requested instruction concerning the need for caution in accepting testimonial identification of the defendant.

During the course of a robbery at a tavern committed by two men, Clark Arasmith was shot and killed. More than 20 persons were present on the premises at the time. Five of them were called as witnesses. Two testified they saw only the gunman who fired the shot, who was concededly not the defendant. Two testified there were two men involved in the robbery but could not say whether defendant was one of them. A fifth witness, one Phillip J. Dietzen, positively identified the defendant as one of the two robbers.

The evidence disclosed that the artificial light in the tavern in the area where the witness was lying on the floor was less well lighted than certain other areas but was "about average" for a tavern. One witness described it:

"[JOYCE ANN MORGAN] * * * It was not entirely dark. You could see people from one end of the bar to the other end of the bar. If you knew them, you could recognize them."

Mr. Dietzen testified that the defendant walked over to where he, pursuant to an order of one of the robbers, was lying face down on the floor, and "touched me with a foot movement to get my attention." The witness looked up at the robber, who asked

him how much money he had. Dietzen told him. The robber did not take it. Immediately thereafter Dietzen again turned his face to the floor and did not again look at the defendant. Mr. Dietzen also testified that he had consumed eight or nine beers during a four and one-half hour period prior to the robbery. He denied being drunk or affected by the drinks. At the trial the witness positively identified the defendant as the robber who had talked with him on that occasion. The evidence was uncontradicted that the other robber shot Arasmith.

The state introduced evidence that earlier on the night of the holdup, Cox, the codefendant, had been present in another tavern next door to the one where the robbery occurred where another witness, Peggy Whitmyer, was employed as a bartender. He remained there for about 45 minutes sitting at the bar having a couple of beers. When she got off work she went next door and was standing at the bar at the time of the robbery. She was forced by Cox after he had shot Arasmith to get behind the bar and open the cash register. She testified that she saw only one person involved in the robbery. She also testified that when Cox was in the other tavern when she was tending bar earlier that evening, Cox was alone, and that she did not see the defendant Jones in that tavern at all.

Prior to the trial Dietzen had identified the defendant from photographs exhibited to him by the police on seven or eight occasions. No claim, however, is made concerning the identification procedures. There was, however, direct evidence showing that the defendant was traveling and at least on two occasions living with Cox, the other robber, using various assumed names.

The defendant requested the following instruction, which the court refused to give:

"You are further instructed that eyewitness identification is not the most trustworthy form of proof of a defendant's guilt since such identification contains many possibilities for error, including outright mistaken identification, the fact that a victim, who was understandably under stress, may have his judgment clouded by emotion, and the fact that the identifying witness may be susceptible of being influenced, intentionally or unintentionally, by suggestion."

Defendant duly excepted to that refusal.

The dangers inherent in the reliability of the identification of a defendant have been frequently pointed out, both with respect to out-of-court identifications and those occurring during the trial itself.[1]

In 3 Wigmore, Evidence (Chadbourn rev 1970), 206, § 786a, the author states:

"(B) *Testimonial* evidence may consist either in the witness' answers to questions on the stand (as here), or in his statements of recognition made prior to trial (§1130 *infra*). The whole process therefore calls for caution and precaution:

"1. It calls for *caution,* in that testimonial assertions to identity must be accepted only after the most careful consideration. On the one hand, the process of recognition being often more or less subconscious, it *may* be quite correct, even though no specification of marks can be given as reasons for recognition. On the other hand, the risk of injustice being so serious, the great possibilities of lurking error should cause hesitation, and the investigator should seek to establish as many marks as possible that may serve circumstantially to

[1] See nn 6, 7 and 8, United States v. Wade, 388 US 218, 87 S Ct 1926, 18 L Ed 2d 1149 (1967).

check the testimonial assertions. At this point, there may be a logical value in numbers of witnesses." (Emphasis in original.)

The author then quotes at length from *United States v. Wade*, 388 US 218, 228-37, 87 S Ct 1926, 18 L Ed 2d 1149 (1967), where that court expatiates upon the need for caution.[2]

In Williams, The Proof of Guilt: A Study of the English Criminal Trial 106 (3d ed 1963), the author states:

"With all the forms of possible error described in this chapter, it is inevitable that some miscarriages of justice should take place under any system of law, and the best that can be hoped and worked for is that these mishaps should be kept to a minimum. In England and America most of the spectacular miscarriages have been due to wrong identification of the defendant as the culprit. * * * The major source of error was found to be the identification of the accused by the victim of a crime of violence. * * * Experience on the Continent of Europe is precisely similar. To quote Gorphe again: 'Errors of recognition can no longer be counted; a volume would not suffice to contain all those that have been discovered, and that is only a small part of the whole. They pertain above all to the identification of persons.' "

ORS 17.255(1) directs:

"In charging the jury, the court shall state to them all matters of law which it thinks necessary for their information in giving their verdict * * *."

[2] It should not be forgotten that the constitutional right primarily relied upon in *Wade* was that of absence in a line-up procedure of an effective right of confrontation and cross-examination. The line-up cases in effect deal with out-of-court identifications. Such is not the case here where the challenge is directed solely to in-court identification. Here there was an untrammeled right to confrontation and cross-examination.

■ The state correctly points out that the statute vests a wide discretion in the trial judge concerning the content of its instructions. *Musulin v. Woodtek, Inc.*, 260 Or 576, 584-85, 491 P2d 1173 (1971); *Nordlund v. Lewis & Clark Ry. Co.*, 141 Or 83, 92, 15 P2d 980 (1932). This discretion, however, is not an unlimited one.

In *Kiddle v. Schnitzer*, 167 Or 316, 327, 114 P2d 109, 117 P2d 983 (1941), the court said:

> "It is within the sound discretion of the trial judge whether to enlarge upon any particular subject covered by general instructions. There are instances in which refusal to give a specific instruction on the emergency rule would constitute reversible error. In the case before us, although it possibly would not have been erroneous to give an instruction on emergency, nevertheless the failure to give such an instruction, in the light of all the facts in the case, can not be said to be an abuse of discretion. To hold in this instance that the circuit court should have instructed the jury with particular reference to the emergency doctrine would establish a precedent requiring a similar instruction to be given, if requested, in practically every case involving a motor vehicle accident."

*See also, State v. Bouse*, 199 Or 676, 698-99, 264 P2d 800 (1953), *overruled on other grounds State v. Fischer*, 232 Or 558, 565, 376 P2d 418 (1962), dealing with the rationale and content of a cautionary instruction amplifying the statutory admonition that the oral admissions of a party should be viewed with caution. ORS 17.250(4).

In *State v. Jennings*, 131 Or 455, 464-65, 282 P 560 (1929), the Supreme Court considered the matter in relation to a criminal case and said:

> "* * * The court has the power to instruct the

jury on all questions growing out of the facts of the cause without a request from either party. This seems to be clear from our statute: § 139, O. L. See also 14 R. C. L., Instructions, § 2. Mr. Randall, in defining what principles of law should be stated to the jury in the course of the instructions, thus expresses the governing rules:

" '* * * Facts or principles of law which have an important bearing on the case should be brought to the notice of the jury, although the arguments of counsel have failed to cover them, * * *. The trial judge should be careful, not only to state all appropriate rules of law, but to point out their relevancy with sufficient explicitness to enable the jury intelligently to apply the law to the facts. * * *

" 'In a criminal case the trial judge must state the contentions of both the state and the defendant, and charge on all the issues made by the testimony, whether the same are raised by the testimony of the accused or some other witness'; Randall's Instruction to Juries, § 118."

■ Certainly the giving of an appropriate instruction to the jury relating to the need for caution in accepting testimonial assertions of identity would here have been appropriate, and we think might well have been given. We cannot, however, say, after a review of the entire record that it was such an abuse of discretion as to warrant a reversal of the conviction.

In criminal actions ORS 138.230 directs:

"After hearing the appeal, the court shall give judgment, without regard to the decision of questions which were in the discretion of the court below or to technical errors, defects or exceptions which do not affect the substantial rights of the parties."

In *State v. Cahill*, 208 Or 538, 582, 293 P2d 169, 298 P2d 214, *cert denied* 352 US 895, 77 S Ct 132, 1 L Ed 2d 87 (1956), *overruled on other grounds State v.*

*Hanna,* 224 Or 588, 591, 356 P2d 1046 (1960), the court considered both this statute and its relationship to Oregon Constitution, Art VII (Amended), § 3, and held:

> "The constitutional provision emphasizes and broadens the salutary provisions of ORS 138.230 under which it has been often held that conviction will not be reversed for technical errors or defects which do not affect the substantial rights of the accused. If the constitutional amendment made no change in the law, it would be pertinent to inquire why it was adopted.

> "After the cases have been examined, one fact remains. The Oregon Constitution is our fundamental law. It applies a simple test as follows: This court is to consider 'all the matters thus submitted', and having done so, 'if the supreme court shall be of opinion * * * that the judgment * * * was such as should have been rendered * * * such judgment shall be affirmed * * *.' Constitution of Oregon, Article VII, § 3."

Other uncontradicted evidence in the case showed that Cox and Jones had taken a room on May 23 in a hotel a short distance from the place where the robbery occurred. They rented and paid for the room for a week to end May 30. Jones registered them with false names as Bill and Kenneth Shipley. The robbery and murder took place in the early morning hours of May 28. Both men disappeared from the hotel without explanation or surrender of the room at approximately that time and neither occupied their room thereafter. At the time they were arrested in Lewiston, Idaho, on June 15, Jones and Cox were jointly occupying a room in a hotel there. Jones had registered them as Ken and Johnnie Wade. At that time Cox had in his possession the same .38 caliber pistol which fired the bullet that had killed Arasmith.

No error is assigned concerning the instructions which were given. The jury was correctly informed that in order to convict, the state must prove beyond a reasonable doubt "that the defendant caused the death of Clark Dale Arasmith in the manner specified in the indictment, which is by, while engaged in the act of armed robbery did unlawfully and feloniously kill the said Clark Dale Arasmith by shooting him with said dangerous weapon, while committing or attempting to commit assault and robbery while armed," and further, "that the defendant did or his accomplice did intentionally take or attempt to take money from the person of Clark Dale Arasmith against his will."

The state further contends that the requested instruction in any event is overbroad, since it asserts as a matter of law that in-court "eyewitness identification is not the most trustworthy form of proof of a defendant's guilt." We agree, but prefer, in view of the extremely serious nature of this charge, not to rest our decision upon that ground.

We conclude that the failure here to give an appropriate instruction concerning the need for caution in relying upon eyewitness identification of a defendant was not prejudicial to this defendant.

■■ The two remaining assignments of error are without merit. One relates to denial of a motion for acquittal. There was more than ample evidence to go to the jury. The other contention relates to the receipt by the court of the evidence of the registration of the two defendants under the different assumed names of Ken and Johnnie Wade in Lewiston, Idaho, some two weeks after the murder. This was admissible both in support of the state's theory of flight to avoid detection and arrest and also to show that Jones and Cox

were in one another's company and living together both immediately before and shortly after the crime.

We are of the "opinion * * * that the judgment * * * was such as should have been rendered * * *" as provided in Oregon Constitution, Art VII (Amended), § 3. Accordingly, the judgment is affirmed. *State v. Cahill,* supra; *State v. Capitan,* 8 Or App 582, 494 P2d 443, Sup Ct *review denied* (1972); *State v. Eller,* 8 Or App 380, 494 P2d 454 (1972).