**Alvin Chavez VALENCIA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 47693.**

Court of Criminal Appeals of Texas.

Dec. 12, 1973.

---

Thomas E. Highsmith, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., William B. Hardie, Jr., Asst. Dist. Atty., El Paso, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

JACKSON, Commissioner.

This is an appeal from an order revoking probation wherein appellant asserts that there was insufficient evidence of any breach by him of his probationary conditions.

The record discloses that on September 12, 1972, appellant pleaded guilty to the offense of "swindling by worthless check" in the amount of fifty ($50.00) dollars and over and was assessed a ten (10) year probated sentence. One of the terms and conditions of his probation was that he ". . . commit no offense against the laws of this or any other State, or of the United States."

On October 17, 1972, the State filed a motion to revoke appellant's probation alleging the appellant had violated the above condition in that he had:

(1) On September 16, 1972, in El Paso converted a 1968 Chevelle belonging to Rudolph Chevrolet, valued at $1595.00, which he possessed as bailee, with intent to·unlawfully and fraudulently convert said property to his own use and with intent to deprive the owner of the value of the same without said owner's consent.

(2) On September 16, 1972, in El Paso converted a Datsun 240Z belonging to Smith Datsun Auto Sales, valued at $4,285, which he possessed as bailee, with intent to unlawfully and fraudulently convert said property to his own use and with intent to deprive the owner of the value of the same without said owner's consent.

Luis Ramirez testified for the State that he was employed as Sales Manager of Rudolph Chevrolet in El Paso on the day of the alleged theft and that on the day in question appellant came in and asked if he could look at some cars. After some discussion, Ramirez allowed appellant to test drive a Chevelle and remembered telling him "don't stay too long." He further testified the car was never reported stolen, insofar as he knew, but that the dealership did not allow cars to be kept out overnight. On cross-examination, Ramirez testified that he did not tell appellant to be back before six o'clock but told him "he could drive the car but not to keep it long." When asked if appellant had phoned in later that day to explain why the car had not been returned, Ramirez stated that he was told on the following Monday that appellant had called in Saturday evening and reported that something was wrong with the car to a Mr. Schollitt, who was then also an employee of Rudolph Chevrolet.

Barney Caufield testified that he was a salesman for Smith Datsun Company in El Paso on the day in question and that appellant drove a 1968 Chevelle onto his lot that day between 3:00 and 4:00 P.M., and in-

quired about purchasing a Datsun 240Z. He further testified that appellant stated that he was desirous of trading in the Chevelle and wanted to know what amount he would be allowed for the Chevelle in trade for the Datsun. Caufield then testified that he quoted appellant a price; that appellant said the price was agreeable; that appellant told him that he worked at the Sky Chef Restaurant and would finance the car through their credit union; and that appellant at the end of their conversation asked to drive the car. After appellant had left in the car, Caufield testified, he then discovered that the Chevelle bore a dealer's identification number on the left vent window; that he called Rudolph Chevrolet who confirmed that the car was theirs, and that he then called the Auto Theft Division of the El Paso Police Department.

The State then called Officer Paul Blott to the witness stand who testified that he stopped appellant on Montana Avenue in El Paso at about 10:15 P.M. on September 16, 1972, in a Datsun 240Z. He further testified that appellant told him that the car belonged to Smith Datsun and that he was returning it. Blott then related that he and appellant went to Smith Datsun where they were met by the owner and that after the car was returned appellant was released.

Appellant, testifying in his own behalf, admitted having taken both of the cars for "test drives." In regard to the Chevelle, he testified that he used the car to perform some personal errands and when asked by the prosecutor "if he had used the car for more than just a test drive," his response was "apparently."

Nevertheless, appellant insisted that the reason he did not return the car was that the engine had begun to malfunction. He further insisted that he called in late Saturday evening to report the trouble and was told by someone at the dealership to "keep the car until Monday." We note that this call would have been after appellant began his "test drive" of the Datsun, according to Caufield's testimony.

Appellant further admitted discussing a trade with Caufield and telling Caufield that the Chevelle was his. He also stated that while "test driving" the Datsun he intended to drive to Las Cruces, New Mexico, but later decided not to.

The elements of the crime of theft by bailee are:

(1) Possession of property by virtue of bailment;

(2) Fraudulent conversion of the same by bailee to his own use without the consent of the owner;

(3) Conversion by bailee with intent to deprive the owner of the value of the property.

Art. 1429, Vernon's Ann.P.C., § 1; Smith v. State, Tex.Cr.App., 501 S.W.2d 657 (1973).

■ With regard to the Chevelle belonging to Rudolph Chevrolet, appellant undoubtedly possessed the auto under an oral bailment contract. Additionally, his manifestation of ownership of the Chevelle to Caufield, coupled with his admitted use of the vehicle for private business, constituted evidence of a fraudulent conversion of the auto to his own use without the consent of the owner. From this evidence could be inferred an intent to deprive the owner of the value thereof.

■ We hold that there was sufficient evidence to support the trial judge's conclusion that the appellant had violated his terms and conditions of probation as charged in paragraph one of the State's motion to revoke.

No abuse of discretion is shown and the judgment is affirmed.

Opinion approved by the Court.