**J. J. ENRIGHT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 48714.**

Court of Criminal Appeals of Texas.

July 10, 1974.

Rehearing Denied Sept. 24, 1974.

Bob Heath, Houston, for appellant.

Carol S. Vance, Dist. Atty., Clyde F. DeWitt, III, Andy Tobias, Asst. Dist. Atty., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

JACKSON, Commissioner.

The offense is theft by bailee in violation of Article 1429, Vernon's Ann.P.C.; the punishment, five (5) years probated.

Appellant contends that the evidence was not sufficient to sustain the jury verdict. We agree.

Appellant, J. J. Enright, was the general manager of Texas Motor Exchange, Inc., a corporation doing business in Houston. On or about May 2, 1972, B. J. Waddell entered into an agreement by telephone with Don Laviolette, service manager of Texas Motor Exchange, to have the motor in his son's 1969 Ford Mustang automobile partially rebuilt. Later that same day the automobile was towed to the Texas Motor Exchange workshop for the contemplated repairs. The car was there three days while the engine was removed, rebuilt and replaced.

During this three day period, Waddell was in close attendance in the work area. He was permitted to observe the work as it was being done and to make inquiries concerning the parts and quality of workmanship involved. He was permitted free access to all parts of the shop where the automobile and the motor were worked on. Testimony reveals that the only incident that could be reasonably construed as an attempt to prevent his opportunity to observe and inspect the work being done was when the shop foreman told him he had better wait up in the customer's waiting room because the shop would be in trouble if representatives of the insurance company providing coverage for Texas Motor Exchange came by and saw him in the work area. Though he left the area immediately, the record shows that his departure was temporary and that later he returned to his vigil. On the afternoon the car was towed in and the engine removed and disassembled, Waddell appeared and asked to see the motor heads. He was told they were in the vats. When he arrived the next morning around 9:30 to 10:30, the heads had already been reassembled and replaced in the motor. Nothing was shown that Waddell had been expected on the second morning by the mechanics or that any real notice, express or implied, had been given prior to that time that Waddell wanted to inspect any of the parts before the engine was assembled and that the progress of the work should be delayed in order to afford him the opportunity to do so other than the bare request to see the heads without further comment the day before. Waddell testified that in his opinion, from his observation of the exposed portions of the heads in the engine, they had not been cleaned. He told appellant of his dissatisfaction but failed to demand that any action be taken.

No formal written contract for the repair of the motor was executed. The record shows that the oral agreement of the parties was subject to modification as the work progressed. After the automobile

was in the shop, Waddell agreed to additional repairs and charges suggested by Laviolette. Later Laviolette agreed to remove the clutch and install a new clutch and pressure plate supplied by Waddell and to do this without charge and without guarantee.

On or about the evening of May 5, 1972, the job was completed and Waddell had his son bring him cash to pay the bill. When he went to pay, he was informed by another company employee in appellant's presence that he would have to sign an "invoice" reading:

"The above work has been inspected and is hereby approved, accepted and received."

There is also evidence that the invoice contained a handwritten statement reading:

"Cust. wants to see and inspect every item done.

"Inspected X_____."

Waddell testified that he told the employee, "I'm sorry but I cannot sign this statement because I have not inspected and I do not approve of all the parts."

He was then informed by appellant, Enright, that he would have to sign the invoice before he could have the car. Waddell left without signing the invoice or paying the bill, and without receiving the automobile. Shortly thereafter Waddell made a complaint to the Commercial and Consumer Protection Division of the Harris County Sheriff's Department. He testified that on or about May 25, 1972 he returned to appellant's place of business and inquired whether appellant had changed his position with regard to the signing of the invoice. The answer was no. He also testified that the primary purpose of his visit was to identify appellant as "J. J. Enright" for the purpose of filing a formal complaint and the visit was pursuant to the advice of Sergeant Zindler of the Consumer Protection Division. Sometime after criminal charges were filed against appellant,

Waddell telephoned Texas Motor Exchange, Inc. and was told that he would not have to sign the "invoice" but need only pay the bill in order to get the auto back. He received its return on June 16, 1972.

During the period of about 40 days in which the automobile was held by appellant, it was kept in storage at the Texas Motor Exchange's place of business. There is no showing that any attempt was made to dispose of it or any physicial use made of it, or that appellant or any employee claimed ownership of the automobile adverse to Waddell.

■ The constituent elements of theft by bailee are:

1. Possession of property by virtue of a bailment.

2. Fraudulent conversion of the same by the bailee to his own use without the consent of the owner.

3. Conversion by the bailee with intent to deprive the owner of the value of the property. See Article 1429, Section 1, V.A.P.C.; Valencia v. State, Tex.Cr.App., 502 S.W.2d 125; Smith v. State, Tex.Cr.App., 501 S.W.2d 657; Purcelley v. State, 29 Tex.App. 1, 13 S.W. 993.

■ To sustain a conviction of theft by bailee, it is not enough to show that a conversion occurred; it must further appear that the conversion was fraudulent. Smith v. State, Tex.Cr.App., 501 S.W.2d 657; Taylor v. State, 50 Tex.Cr.R. 377, 97 S.W. 473; Von Senden v. State, Tex.Cr. App., 45 S.W. 725. The word "fraudulent" as used in the definition of theft by bailee means that the wrongful conduct must be accompanied with an intent to deprive the owner of his property or its value permanently. Taylor v. State, 50 Tex.Cr.R. 377, 97 S.W. 473; Smith v. State, Tex.Cr.App., 501 S.W.2d 657. Cf. Weeks v. State, 114 Tex.Cr.R. 406, 25 S.W.2d 855; Brewer v. State, Tex.Cr.App., 488 S.W.2d 414.

It is recognized that the evidence clearly shows Waddell was deprived of the temporary possession of the property with an intent to coerce a release of civil liability that Waddell was not required to give. There is nothing in the record to show that appellant, at any time, intended to deprive Waddell of the car permanently. Though the temporary deprivation was wrongful, it was not such conduct as is prohibited by Article 1429. Rather it was a matter of dispute amenable to adjudication in the civil courts. The evidence here is insufficient, upon the whole record, to support a finding of guilt within the meaning of Article 1429, § 1.

Because of our conclusion that the evidence was insufficient to sustain the conviction, we find no need to consider appellant's remaining grounds of error.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.